DECISION
The plaintiff, Memorial Funeral Home, Inc. (Plaintiff), brings this appeal of the November 13, 1995 decision of the Zoning Board of Review for the Town of Portsmouth (Board) which upheld a decision of the building inspector requiring plaintiff to obtain additional relief from the Board to install a crematorium in its existing funeral home. This court retains jurisdiction pursuant to G.L. 1956 § 45-24-20.
FACTS/TRAVEL
Plaintiff owns and operates a funeral home in a residential district (R-20) at Assessor's Map 27, Lot 31, 55 West Main Road, Portsmouth, Rhode Island. Plaintiff established this business on March 17, 1983, when the Board granted plaintiff a special exception to convert an existing structure on the property to a funeral home. In 1994, Plaintiff applied for a special use permit to expand the first floor of the funeral home[1] and to construct "an accessory building to be used exclusively for funeral home purposes." (Plaintiff's Brief at Appendix 4a, Petition of Memorial Funeral Home, Inc.) Plaintiff's petition did not further particularize the "funeral home purposes" mentioned.Id. In a written decision of February 1, 1995, the Board characterized plaintiff's petition as one to "build an accessory use building to be used exclusively for funeral home purposes." (Decision of February 1, 1995 at p. 1) In the conclusion of the Board's written decision, the Board granted plaintiff's petition for the accessory building. While the Board indicated that the accessory building was to be used exclusively for funeral home purposes, the Board did not further specify those purposes.
After the grant of the special use permit, plaintiff took steps to install a crematory in the accessory building. In a letter of September 1, 1995, the alternate building official, George Medeiros, refused to authorize installation of the equipment to operate plaintiff's crematorium. He opined that the construction of the crematorium required additional relief from the Board. Plaintiff appealed the building official's decision to the Board.
On October 25, 1995, the Board held an advertised hearing to consider plaintiff's appeal. At the hearing, plaintiff offered the following documents into evidence before the Board: Pre-July 1, 1994 Portsmouth Ordinances, which designated crematoriums as an Institutional, Recreational or Educational Use and designated mortuary, undertaking or funeral establishments as Retail Business or Consumer Service Establishments; Post-July 1, 1994 Portsmouth Ordinances, which changed the designation of a crematorium from an Institutional, Recreational or Educational use to a permitted part of a funeral establishment; March 25, 1983 decision of the Board; Plaintiff's 1994 petition for a special use permit to allow accessory use building; January 24, 1995 decision of the Board granting plaintiff's petition; May 9, 1995 letter from the Planning Board, which stated the intention of the 1994 ordinance governing crematoriums; and the September 1, 1995 decision of the Alternate Building Official, George Medeiros. Several abutting landowners appeared at the hearing and spoke against the installation of the crematorium. Plaintiff, through counsel, Eric Chappell, argued that the newly enacted zoning ordinance, Portsmouth Zoning Ordinance, Article 5: Table of Use Regulations, Section E, paragraph 7, did not require plaintiff to obtain another special use permit to install the crematorium. In a 4 to 1 vote, the Board upheld the alternate building official's decision to require plaintiff to obtain another special use permit for the crematorium. In support of its decision, the Board made the following findings of fact:
 "The board found that Appellant proposes to install the crematorium in a new building presently under construction. The special use permit granting Appellant the right to expand its funeral home from the first floor of the main building on the property was carefully worded. It allowed Appellant "To construct an accessory building to be used exclusively for funeral home purposes . . . as presented in the testimony . . . ." Those purposes, the Board noted at that time, "would be to house funeral vehicles, to store caskets, provide a show area for the caskets and an office."
 "When the special use permit was requested, Appellant presented no evidence of any intention to install a crematorium."
[October 25, 1995 Decision of the Board].
The plaintiff filed this timely appeal.
STANDARD OF REVIEW
The Superior Court reviews zoning board decisions pursuant to G.L. 1956 § 45-24-69 (D), which provides in pertinent part:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 "(1) In violation of constitutional, statutory or ordinance provisions;
 "(2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 "(3) Made upon unlawful procedure;
 "(4) Affected by other error of law.
 "(5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
In reviewing the Board's decision, this court is precluded from substituting its judgment for that of the agency with respect to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of MotorVehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I.Conflict of Interest Commission, 509 A.2d 453, 458 (R.I. 1986). This Court's review is limited to determining whether substantial evidence exists to support the agency's conclusions as to the application of law. Newport Shipyard v. Rhode Island Commissionfor Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is more than a scintilla but less than a preponderance of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647; Salve Regina College v.Zoning Board of Review, 594 R.I. 878 (1991). This Court may reverse conclusions of administrative agencies when they are totally devoid of competent evidentiary support in the whole record. Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981).
Despite the great deference accorded to questions of fact, this court retains the power to review agency decisions to determine what the law is and its applicability to the facts.Narragansett Wire Co. v. Norberg, 376 A.2d 1, (R.I. 1977).
Plaintiff argues that this court should reverse the Board's decision. First, plaintiff contends that the Board lacked jurisdiction to require a special use permit when plaintiff had already received a special use permit for the same use. Second, plaintiff maintains that the Board's decision is erroneous where the plain and unambiguous words of the zoning ordinances state that crematories are permitted uses. Finally, plaintiff asserts that the Board erred where the legislative history demonstrates an intent to allow crematories in funeral homes by right.
A zoning board of review has the authority to grant a special use permit only where the plaintiff meets the standards established by ordinance. G.L. 1956 § 45-24-42;[2] see alsoMonforte v. Zoning Board of East Providence, 93 R.I. 447, 451, 172 A.2d 726 (1962). In addition to those standards established by ordinance, the Board has the authority and discretion to impose additional special conditions upon the grant of a special use permit. G.L. 1956 § 45-24-43; see also Richardson v.Zoning Board of Review of City of Warwick, 221 A.2d 460, 465, 101 R.I. 202 (1966).
The Portsmouth Zoning Ordinance follows the mandates of the Rhode Island General Laws and authorizes the Zoning Board both to grant a special use permit for those uses designated by the ordinance and to impose special conditions upon the grant of a special use permit. Portsmouth Zoning Ordinance, Article VII, Special Use Permits, Section A (July 1, 1994); Id. at Article X, Special Conditions, Section A., paragraph 1. The Portsmouth Ordinance further mandates, however, that any special conditions imposed must be articulated in the Board's decision. Id. at paragraph 3.
The Board argues that its decision of February 1, 1995, imposed special conditions upon its grant of a special use permit. Specifically, the Board argues that the February 1, 1995 grant of the special use permit does not permit a crematorium both because a crematorium was not mentioned in plaintiff's application, and because the Board limited its grant of a special use permit to the uses listed in plaintiff's application. This court is satisfied that Rhode Island statutes and caselaw do not support the Board's argument. First, the Rhode Island Legislature, pursuant to G.L. 1956 § 45-24-43, requires the Board to expressly include any special conditions imposed upon the grant of a special use permit in the Board's decision. Furthermore, the Rhode Island Supreme Court has considered what constitutes an express condition. In Hopf v. Board of Review,230 A.2d 420, 426, 102 R.I. 275, 284 (1967), the Rhode Island Supreme Court determined that a Board's reference in its decision to "submitted plans" does not constitute a "condition" upon the grant of a special permit, as "condition" is understood in the provision of the general laws governing special use permits. Id. Rather, the Board's reference, in its decision, "to erect the office building described in the submitted plan" merely constitutes a recitation of "the very relief sought by [petitioner]" and does not rise to the level of an express condition upon the grant of the special use permit. Hopf, 230 A.2d at 426.
Applying the Hopf analysis to the case at bar, this court is satisfied that the Board's reference in its February 1, 1995 decision to "the Petition for a Special Use Permit to construct . . . an accessory building to be used exclusively for funeral home purposes . . . as presented in the testimony and contained in the application . . ." constitutes a recitation of the very relief sought by the petitioner, and does not rise to the level of an express condition upon the Board's grant of a special use permit.
The plaintiff in this case argues that the Board lacks jurisdiction to require a successive special use permit because the plaintiff's crematorium is of the same character as the use permitted by the February 1, 1995 grant of a special use permit.
It is well-settled in this state that a zoning board of review lacks authority to grant a subsequent special exception where the use sought by the plaintiff is of the same character as that granted in a prior exception and where there is no substantial intensification of that use. Warner et ux. v. Boardof Review of the City of Newport, 243 A.2d 92, 94, 104 R.I. 207, 211 (1968); Bernstein, et ux. v. Zoning Board of Review of theCity of East Providence, 209 A.2d 52, 53, 99 R.I. 494, 501 (1965). A zoning board's grant of a special use permit includes a grant for those uses that are both governed by the same ordinance provision and of the same character and intensity as the permitted use. Bernstein, 52 A.2d at 53. Furthermore, this court is mindful that a landowner who is granted a special exception from a zoning ordinance becomes entitled as of right to make use of land in accordance with the exception and retains that right as long as the use is not intensified to the extent that it becomes contrary to the public interests which justify exercise of the police power. Warner 243 A.2d at 95.
In the case at bar, a review of the applicable law and evidence indicates that a crematorium was of the same character as the other funeral home purposes granted by the February 1, 1995 decision. First, a crematorium is governed by the same provision of the Portsmouth zoning ordinance, Article V, Section E., paragraph 7 as those "funeral purposes" contemplated by the Board when it granted the plaintiff's special exception in 1995. The Portsmouth Zoning Ordinance designates creamatoriums as permitted uses on the premises of funeral establishments in residential districts that require a special use permit. Id. at Article V: Table of Use Regulations, E. Retail Business and Consumer Service Establishments Uses, paragraph 7 (July 1, 1994). Also, in a letter from the Portsmouth Planning Board placed in evidence before the Board, the Planning Board interprets the above zoning ordinance. The Board may properly consider this letter as evidence of the Town Council's interpretation of the intent behind its own ordinance. See generally In re AdvisoryOpinion to the Governor, 504 A.2d 456 (R.I. 1986). The letter indicates that it was the intention of the Portsmouth Town Council, in amending the above zoning ordinance in 1994, to eliminate the need to obtain separate special use permits for crematoriums and for other funeral purposes. The letter indicates that "the question of allowing a crematorium . . . came up for discussion several times. The members agree that allowing a crematorium on the premises [of funeral homes] would permit a funeral establishment to provide full funeral service needs to any family that might wish to have this type of service provided for their loved ones." May 9, 1995 Letter of Portsmouth Planning Board. This interpretation of the zoning ordinance by the drafters clearly supports the plain meaning of the ordinance that crematoriums constitute the same character of use as other funeral home uses. Furthermore, the record is devoid of any competent evidence to indicate that the crematorium is not of the same character as the "funeral purposes" approved in the February 1, 1995 decision. Although a number of neighbors did not support the crematorium on the premises, it is well-settled in this jurisdiction that lay judgments of neighboring property owners have no probative force in respect to a zoning board's review of a special exception. Salve Regina College v. Zoning Board ofReview of the City of Newport, 594 A.2d 878, (R.I. 1991). After a careful review of the ordinance provisions, this court finds that the crematorium is of the same character of use as "funeral home purposes" mentioned in the February 1, 1995 decision.
The plaintiff's special exception of February 1, 1995, therefore, entitles the plaintiff, as of right, to make use of land in accordance with the exception. The plaintiff retains that right as long as the use is not intensified to the extent that it becomes contrary to the public interest. Warner 243 A.2d at 95.
A careful review of the record reveals that the operation of a crematorium in the accessory building does not substantially intensify the use of that building. Evidence in the record indicates that the plaintiff sought the accessory building granted by the February 1, 1995 decision so that the funeral home could accommodate two funerals simultaneously. Although a crematorium provides another option to patrons of the funeral home, the record is devoid of any competent evidence to indicate that the funeral home can accommodate more than two funerals simultaneously.
A review of the entire record of the hearing certified to this Court reveals that the record neither supported the court's finding that the crematorium substantially intensified the use granted in February 1, 1995, nor does it support a finding that the crematorium was of a different character of use than that granted in February 1, 1995. Therefore, this court finds that the Board's decision is clearly erroneous in view of the reliable, probative and substantial evidence contained in the record. Accordingly, the decision of the Zoning Board of Review of the Town of Portsmouth is reversed.
Counsel shall submit the appropriate order for entry.
[1] Plaintiff's petition for an addition to the first floor of the funeral home for use as a memorial chapel was granted and is not at issue in the present appeal.
[2] Although the cases refer to "special exceptions" and not to "special use permits," the terms are equivalent. See R.I. Gen. Laws § 45-24-31 (57) (1991) (effective July 1, 1993).
BLOCK ISLAND LAND TRUST v. WASHINGTON TRUST CO., ___ A.2d ___ (1997) ___ A.2d ___ BLOCK ISLAND LAND TRUST v. THE WASHINGTON TRUST COMPANY C.A. No. WC 91-394 SUPERIOR COURT WASHINGTON, S.C. FILED: FEBRUARY 10, 1997
DECISION WILLIAMS, J.
Before this Court is a request for declaratory relief by the plaintiff, Block Island Land Trust (plaintiff). The plaintiff asks this Court to declare that the defendant, the Washington Trust Company (defendant), is required to pay transfer fees to the Block Island Land Trust (BILT) following the trust company's purchase at foreclosure of two separate interests in real property located in New Shoreham, Rhode Island. Jurisdiction is pursuant to G.L. 1956 § 9-30-1 et. seq.
Facts
The parties stipulated to the following facts. The Washington Trust Company entered into two mortgages, identified as a mortgage from William J. Green to the Washington Trust Company in the original amount of $400,000.00 dated October 21, 1988, and a mortgage to William T. Hall and Gloria L. Hall to the Washington Trust Company in the original amount of $62,000.00 dated February 6, 1989. (the "Green Mortgage" and the "Hall Mortgage"). See
Exhibits A and B. The mortgagors on the above-mentioned instruments defaulted and, in each instance, the Washington Trust Company invoked its statutory power of sale and foreclosed the mortgage. See Exhibits C and D. At the foreclosure sale on the Green mortgage, the Washington Trust Company bid $375,000.00 for the mortgaged premises. This being the highest bid for the mortgaged Green premises, the Washington Trust Company executed and recorded the foreclosure deed. See Exhibits C, 1-9. At the foreclosure sale on the Hall mortgage, the Washington Trust Company bid $45,000.00 for the mortgaged Hall premises and then executed and recorded the foreclosure deed. See Exhibit D, 1-6. In each instance, after purchasing the mortgaged premises at the foreclosure sale, the Washington Trust Company applied the amount it bid at those sales to the outstanding amounts owed to it under the Green and Hall mortgages at the time of foreclosure.
This Court notes that the Block Island Land Trust (BILT) is a public entity established under P.L. 1986, ch. 268, as amended by P.L. 1987, ch. 266 [Enabling Act]. In order to preserve open space and farmland on the island, a percentage of the purchase price for a conveyance of an interest in real estate on Block Island must generally be paid by the purchaser to BILT when the interest is recorded. See P.L. 1987, ch. 266, §§ 1, 6, 7. The recording of mortgage deeds is expressly excepted from this requirement. See P.L. 1987, ch. 266, § 7. Thus, the Washington Trust Company did not pay BILT transfer fees when it recorded the mortgage deed granted to Green, or when it recorded the mortgage deed to the Halls.
On January 3, 1991, the Washington Trust Company recorded the foreclosure deed for the Green real estate, along with accompanying exhibits and affidavits in Block Island's land evidence records. ASF § 3, Exhibit C, 3-9. At the same time, and together with the deed and its accompanying documents, the trust company recorded a BILT Form A affidavit, attesting to the correct purchase price, and a BILT Certificate Form B affidavit, claiming a basis for exemption from transfer fee. Although the foreclosure deed states that the property was sold to the Washington Trust Company for $375,000, on the recorded BILT Form A affidavit, the trust company declared that the true and complete purchase price given by it for the real property interest it granted itself in relation to the property described in the foreclosure deed was zero dollars. See Exhibit C, 3 and Exhibit C, 9. On the same form, the Washington Trust Company stated that its transfer of the property to itself is subject to the real estate conveyance tax imposed by G.L. § 44-25-1. See
Exhibit C, 3. On BILT Form B, however, the Washington Trust Company claimed the transaction is exempt from the BILT transfer fee because it did not pay consideration for the interest it conveyed to itself. Id.
On February 15, 1991, the defendant recorded the foreclosure deed and accompanying exhibits and affidavits for the Hall property in the Block Island land evidence records. See D, 3-6. Again, along with the deed and its accompanying documents, the defendant recorded a BILT Form A affidavit attesting to the true and complete declaration in the event that exemption from transfer fee is claimed. See Exhibit D, 1-2. Although statements on the deed indicate that the property was sold to the defendant for $45,000, on the recorded BILT Form A affidavit, the defendant declared that the purchase price given by it for the real property interest it granted itself in relation to the Hall property was zero dollars. See Exhibit D, 3. The defendant parenthetically noted "($45,000 applied to [the Washington Trust Company's] mortgage)." Id. On the same form, the defendant stated that its transfer of the Hall property to itself is not subject to the real estate conveyance tax imposed by R.I.G.L. §44-25-1 and, objecting to the affidavit, claimed that the transaction is exempt from the BILT transfer fee. See Exhibit D, 1. Thereafter in July 2, 1991, the plaintiff filed a petition for declaratory judgment.
Pursuant to the Uniform Declaratory Judgment Act, this Court has the power to construe for any interested person a question of construction arising under a statute. See G.L. §§ 9-30-1,9-30-2. The defendants contend that both the Rhode Island Division of Taxation, and the Rhode Island Attorney General must be joined by the plaintiff as parties in this action; otherwise this Court cannot exercise jurisdiction in order to decide the issues at bar.
General Laws § 9-30-11 of the Uniform Declaratory Judgment Act states in pertinent part:
 "In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance or franchise is alleged to be unconstitutional, the attorney-general of the state shall also be served with a copy of the proceeding and be entitled to be heard."
This Court notes that § 9-30-11, as a rule relating to service of process, must be followed and construed strictly.Brown v. Samiagio, 521 A.2d 119, 121 (R.I. 1987). In addition, this Court is also aware that failure to join all persons who have an interest that would be affected by the declaration ordinarily is fatal to an action. Thompson v. Town Council ofWesterly, 487 A.2d 498 (R.I. 1985). However, the issues in the case at bar concern only the applicability of a statute, and not the constitutionality of the statute. Thus, the plaintiff does not need to effectuate service of process on the Attorney General before this Court can exercise jurisdiction in this matter. Furthermore, BILT is not attempting to enforce or collect a conveyance tax under R.I.G.L. § 44-25-1, but rather is asking this Court to declare whether the applicability of the conveyance tax under R.I.G.L. § 44-25-1 allows BILT to collect transfer fees. Thus, since BILT is not challenging the constitutionality of any statute, nor is it seeking to enforce or collect a tax under R.I.G.L. § 44-25-1, the Attorney General and the Division of Taxation are not indispensable parties in this action. Accordingly, BILT is not required to effectuate service of process on these parties under R.I.G.L. § 9-30-11.
Section 44-25-1 of the Rhode Island General Laws states that
 (a) There is hereby imposed, on each deed, instrument, or writing by which any lands, tenements, or other realty sold shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his or her or their direction, when the consideration paid exceeds one hundred dollars ($100), a tax at the rate of one dollar and forty cents ($1.40) for each five hundred dollars ($500) or fractional part thereof which is paid for the purchase of the property (inclusive of the value of any lien or encumbrance remaining thereon at the time of sale), which tax shall be payable at the time of making, execution, delivery, acceptance or presenting for recording of the instrument. In the absence of an agreement to the contrary, the tax shall be paid by the grantor.
 (b) In the event no consideration is actually paid for the lands, tenements, or realty, the instrument of conveyance shall contain a statement to the effect that the consideration is such that no documentary stamps are required.
Section 7 of the Block Island Land Trust Enabling Act provides that
 Whenever there is a transfer of real property situated in the town of New Shoreham on which there is imposed a tax under section 44-25-1
of the general laws, there is hereby imposed, in addition to said tax, a fee not to exceed the amount of five percent (5%) of the amount of the purchase price as adopted pursuant to section 6. The payment of the fee hereby imposed shall be made to the trust and shall be evidenced by a certificate, provided by the trust or its designee, indicating the fee has been paid or that the transfer is exempt from the fee, and stating the basis for the exemption. Said certificate shall be entered upon the land records at the same time of the recording of the land transfer to which it refers. The town clerk shall not record or register, or receive or accept for recording or registration, any deed, except a mortgage deed, to which has not been affixed such certificate, executed by the trust or its designee. Failure to comply with this requirement shall not affect the validity of any instrument. Said fee shall be the obligation of the buyer of real property. Any agreement between the buyer and the seller or any other person with reference to the allocation of the responsibility for bearing such fee shall not affect such liability of the buyer.
In other words, the Block Island Land Trust has a statutory right to transfer fees whenever there is a tax imposed under G.L. §44-25-1. The plaintiff contends that the Washington Trust Company is statutorily obligated to pay the transfer fee because the requisite elements of deed, sale, conveyance to purchaser, and consideration paid in excess of $100 triggering the imposition of a tax under G.L. § 44-25-1(a) have been satisfied.
Alternatively, the defendant argues that the conclusion to be reached on the facts and circumstances presented with respect to these transactions is that no consideration was actually paid for the property, thus G.L. § 44-25-1(a) does not apply, and BILT is not entitled to its transfer fees. This Court does not agree.
It is well-settled doctrine that when a statute is unambiguous and expresses a clear and sensible meaning, the work of construction is at an end and this meaning will be implemented in accordance with the plain language set forth. Dahl v. Begin,660 A.2d 730, 731 (R.I. 1995)(citations omitted). Such meaning is presumed to be the one intended by the Legislature, and the statute must be literally applied. Exeter-West Greenwich RegionalSchool District v. Pontarelli, 460 A.2d 934, 936 (R.I. 1983). In the case at bar, the applicability of G.L. § 44-25-1(a) is plain and unambiguous.
General Laws § 44-25-1(a) clearly sets forth that when the consideration paid for the transfer of real estate exceeds one-hundred ($100) dollars, a tax must be paid to the state of Rhode Island. While the defendant contends that no consideration was actually paid, this Court is satisfied, after a careful review of the language of the statute, along with the documents submitted as exhibits, that consideration was paid for the properties in question.
First and foremost, despite the fact that the defendant did not actually pay money to itself, the defendant is considered in the discharge of its legal obligations as both mortgagee and purchaser to have actually paid the equivalent of cash at the time of delivery of the foreclosure deed. See O'Brien v. Slefkin,88 R.I. 264, 270, 147 A.2d 183 (1958). Moreover, on the foreclosure deed the defendant granted to itself following its purchase at foreclosure of the Green property, the instrument states that
 "for Three Hundred Seventy Five ($375,000.00) Dollars paid, grants to the Washington Trust Company, of 23 Broad Street, Westerly, Rhode Island 02891, the premises . . ." Exhibit C, 3.
Likewise, on the foreclosure deed the defendant granted to itself after its purchase at foreclosure of the Hall property, the instrument states that
 "for the sum of Forty-five Thousand and 00/100 ($45,000.00) Dollars paid, grants to the Washington Trust Company said premises . . ." Exhibit D, 3.
Accordingly, this Court finds that the recording of the real property interests, specifically the purchase of the Hall property and the Green property by the Washington Trust Company at the foreclosure sales, are indeed taxable events under G.L. § 44-25-1(a). Therefore, as taxable events, the recording of the real property interests in the Hall and Green real estate are not exempt from payment of BILT transfer fees. As a result, the amounts bid by the Washington Trust Company at the foreclosure sales constitute the purchase prices for the purpose of determining the amount of transfer fees due BILT.
For the foregoing reasons, this Court declares that pursuant to G.L. § 44-25-1 (1) and Section 7 of the Block Island Land Trust Enabling Act, the Washington Trust Company is required to pay transfer fees to the Block Island Land Trust as a result of the defendant's purchase at foreclosure of two separate interests in real estate located in New Shoreham, Rhode Island.
Counsel shall prepare an appropriate judgment for entry.