221 A.2d 460 (1966)
Bernice RICHARDSON
v.
ZONING BOARD OF REVIEW OF the CITY OF WARWICK.
M. P. No. 1776.
Supreme Court of Rhode Island.
July 14, 1966.
*462 Milton Bernstein, Providence, for petitioner.
James R. Morriss, City Sol., Howard R. Haronian, Asst. City Sol., Anthony A. Giannini, amicus curiae, Providence, for respondent

OPINION
KELLEHER, Justice.
This is a petition for certiorari brought to review the action of the zoning board which granted an application for an exception to the zoning ordinance permitting the erection of a building which would be used for the sale, servicing and assembly of heavy-duty trucks. In compliance with the writ the pertinent records have been certified to this court.
The land on which this facility would be built, together with all property surrounding it, is zoned for heavy industrial uses. The petitioner is an abutting property owner.
The applicants, John V. and Vincent P. Confreda, are the owners of 25 lots of vacant land which together comprise a parcel of approximately four acres. It is bounded by Interstate Route 95, which is part of our nation's expanding highway system; Jefferson Boulevard, which is a main thoroughfare in the city of Warwick; Chestnut street, a neighborhood street; and the Pawtuxet River. The site plan introduced at the hearing shows that immediately to the front of this parcel is an access road which leads one directly onto Interstate Route 95.
The petitioner resides in a home which is located at the southwest corner of the applicant's land. The site plan shows her property to be within 25 feet of Interstate Route 95.
At the hearing before the board John V. Confreda, one of the applicants, testified that he and his brother have an option to sell their property to a subsidiary of one of this nation's largest automobile manufacturers.
The board was then informed that a building in excess of 12,700 square feet would be built on this land to be used for the sale, service and assembly of heavy-duty trucks exclusively. An inventory of truck parts having a value in excess of $1,000,000 would be maintained at this location. Trucks manufactured in other areas of this country and Canada would be brought to Warwick. Upon arrival, they would have only the minimum equipment required of such vehicles. Here, however, the various parts and components which were ordered according to the customer's specifications would then be added. The completed truck would then be delivered to the customer. This phase of the proposed use was described by one of the automobile manufacturer's representatives as a specialized type of operation as contrasted against the usual stock production of trucks. Servicing of these vehicles would also be carried on in the proposed structure by "truck engineers" instead of the usual automobile mechanics.
Plans submitted to the board showed that the building would be divided into areas for the administrative force, the sales force, a parts department and the service area. The initial complement of *463 employees to man this center was estimated to be 50. This activity was described as being unique in that it would be limited to the heavy-duty truck market.
The site plan shows that petitioner's home is to the rear of the proposed building. The distance between her residence and the nearest point of the proposed structure would be in excess of 100 feet.
This operation was described as the only one of its kind in Rhode Island. Drawings and a photograph of similar plants constructed in various parts of the United States were made part of the record. The total land acquisition and building costs were estimated to be in excess of $500,000. The board was informed certain functions of this new facility would fill a void created by the resignation of a former heavy-truck dealer.
A real estate expert of unquestioned qualifications offered testimony in support of the application. He testified as to his knowledge of this particular area of Jefferson Boulevard and his experiences with several large industrial concerns located on this highway. After examining all of the land in and about the proposed truck center, he was of the opinion that the installation of this facility would not depreciate the value of any of the surrounding land and that the proposed automotive use would be compatible with an industrial zone. He also pointed out that the proposed site is large enough and so situated with reference to Jefferson Boulevard and the access roads leading to the interstate highway that it can be reached in many directions. These factors, he said, nullify any traffic congestion at this location. He stated that this new enterprise will service many of the industrial firms presently located near or on Jefferson Boulevard, many of which use trucks and require service. He also believed that other industrial plants would benefit by its location in Warwick. He concluded his testimony by stating that it was his opinion that the construction of this building at this location would be in harmony with the general purposes and intent of having an industrial zone in this area.
The petitioner, who appeared at the hearing, told the board that she has resided for some time in her two-bedroom cottage, that she had not attempted to sell her property because no private family would buy it and her land was too small for a factory, and that she objected to the establishment of this facility because of the noise and disturbance it would create.
Other testimony disclosed that while the noise emanating from the proposed operation would be of a higher noise level than that associated with a residential level, it would not be as high a noise level as one would hear in industrial operations which could be allowed on this parcel under the current zoning regulations. It was also pointed out that the construction and site plans call for placing the building as far from Mrs. Richardson's home as possible. The board was told that certain landscaping techniques would be used on the premises to reduce the noise factor insofar as it concerned petitioner.
The proposed use of the applicants' land is permitted within an area of Warwick which is zoned as a general business district. The applicants' land, however, is in a heavy industrial district. Section 8.3 of the zoning ordinance gives the board authority to permit in an industrial district, any business district "uses consistent with the requirements of an Industrial District."
Although the application of the Confreda brothers was described as one for an exception or variance, it is obvious that they are seeking a special exception created by the city council within the local ordinance. This particular provision is enacted by the city council pursuant to the authority of the state enabling act, G.L. 1956, § 45-24-13. The authority of the *464 zoning board to grant this exception, however, is not free and unfettered. Evidence must be presented that certain other standards contained in § 45-24-13 are satisfied. They are that the exception is in harmony with the general purpose and intent of the ordinance and it is reasonably necessary for the public convenience. After an evaluation of the instant record it is our opinion that the board in its action has complied with these requirements.
While the board's finding, as set forth in the resolution which granted the instant application, leaves much to be desired in the technical sense of draftsmanship, we will ignore such deficiencies and examine the record to ascertain whether it contains any evidence which warrants its findings that the proposed use was consistent with those of an industrial district, that it would not alter the comprehensive plan, and that this grant was reasonably necessary for the public convenience or welfare. Fitzgerald v. Board of Review, 99 R.I. 221, 206 A.2d 635; Bastedo v. Board of Review, 89 R.I. 420, 153 A.2d 531.
It is desirable that a zoning board in its decision should adhere to the language of the statute and ordinances. Its failure to do so will not be fatal when it is clear that the decision, even though it states the applicable standards in loose rather than exact language, is supported by the evidence. Durfee v. Zoning Board of Review, 94 R.I. 316.
We believe the instant record shows evidence that the proposed use is consistent with the requirements of an industrial district. Although the board in its decision used the term "compatible," we believe the words "consistent" and "compatible" are synonymous. In Hendels Investors of Rhode Island, Inc. v. Zoning Board of Review, 100 R.I. 264, 214 A.2d 200, we held a use was compatible if it was congruous with, tolerant of and had no adverse effects upon existing neighborhood uses. Our definition there applies with equal force here.
Section 8.2 of the ordinance lists as some of the permitted industrial uses the following: land and buildings used for administration, processing, assembly, storage and similar operations. It is readily apparent that the record here has produced the required consistency between what the applicants desire and what is permitted in this district. These uses together with the testimony of the real estate expert as to the effect of the operations on the neighboring property bring this proposed use well within the rule enunciated in Hendel's Investors of Rhode Island, Inc., supra.
We point out further that while sec. 8.2 prohibits an automobile body repair shop, the uncontradicted testimony before the board was that no such work would be done at this location. If a truck part was damaged it would be replaced, not repaired.
The proposed use being consistent with the requirements of an industrial district, the record also shows that there is competent evidence probative of compliance with the legislative requirements that this use was harmonius with the intent of the ordinance and was reasonably necessary for the public convenience. The testimony of the real estate expert and the manufacturer's representatives, which we have referred to at length previously, is dispositive of these two issues.
As we have said on other occasions, a special exception is designed to alleviate a restriction on the owner's common-law right to make free use of his land and that it was proper to relieve a particular parcel of land from such a burden when such action is not contrary to those public interests which give validity and vitality to zoning.
These public interests are the promotion of the health, safety, morals and general welfare of the community.
*465 We observed in Center Realty Corp. v. Zoning Board of Review, 96 R.I. 76, 189 A.2d 347, that many zoning boards when construing the phrase "public convenience and welfare" confuse its meaning, as applicable in the field of zoning, with the meaning attributed to this phrase or similar terminology when used in certain areas of governmental regulations such as public utilities. Such a construction has no place in the law of zoning. We pointed out there and we reiterate now that zoning legislation was never intended as a means of controlling competition in an area. Competent evidence of the existence of a need or a demand for a proposed use is always demonstrative that the zoning board's grant is in the public interest. Evidence, however, that there are existing facilities which would render the same service as the proposed use is not competent unless it can be shown that to allow the proposed use would result in conditions that would be inimical to the public health, safety, morals and welfare. Among such conditions would be traffic congestion, depreciation of surrounding property and other deleterious factors.
Here the record shows that the grant to the applicants is in the public interest. The petitioner's bare assertion that she felt the proposed use would depreciate her property is a lay judgment unsupported by any factual data or background and is not competent evidence that would warrant the denial of the instant application. Thomson Methodist Church v. Zoning Board of Review, 99 R.I. 675, 210 A.2d 138.
On certiorari we do not weigh the evidence probative of the pertinent issues to determine if it preponderates in the applicants' favor. This is the function of the zoning board. Costantino v. Zoning Board of Review, 74 R.I. 316. The petitioner's allegations that the applicants have not sustained their burden of proof before the board are without merit.
The petitioner also alleges that the board's decision is against the law and the evidence in that the board could not reasonably conclude that the appropriate use of neighboring property "would not be substantially and permanently damaged." This contention is not persuasive. An examination of the enabling act and the zoning ordinance shows no provision in either requiring such proof. We have repeatedly held that when considering if a board has abused its discretion in granting an exception, we shall apply the ordinance as it is written. Budlong v. Zoning Board of Review, 93 R.I. 199, 208, 172 A.2d 590; Cole v. Zoning Board of Review, 94 R.I. 265, 179 A.2d 846.
The board's failure to impose any conditions on the grant has been cited by petitioner as evidence of its arbitrariness. While it is true that the enabling act and the Warwick ordinance permit a zoning board to impose certain conditions when granting an exception, we do not believe that such an imposition is a condition precedent before the board can exercise its authority. Whether conditions should be attached to an exception is a matter which rests in the discretion of the board. Here petitioner resides in an area zoned for heavy industrial uses. Her property is within 25 feet of Interstate Route 95. It needs little imagination to realize that many vehicles including trucks and trailers, the modern behemoths of the highway, use this roadway of commerce which connects Rhode Island with various parts of the eastern seaboard from Maine to Florida. This knowledge was available to the board. The situation in which petitioner finds herself occurred long before the instant application was filed. There was no abuse of discretion by the board in not imposing any conditions on the exception granted herein.
The final allegation of the petitioner to be considered is her statement that the board's action is illegal. The granting of this exception which affects *466 25 lots of land she contends is in effect in an amendment of the zoning ordinance. A similar position was expressed in Gallagher v. Zoning Board of Review, 95 R.I. 225, 186 A.2d 325. There we held that the unusual extensiveness of the land was not necessarily a controlling factor in determining the validity of the zoning board's action. This statement also applies here. While the grant of power given the zoning board by the ordinance is broad, it is limited in that before it can be exercised it must be shown that the use is in harmony with the general purpose of the ordinance and reasonably necessary to the public convenience. This is in accord with our holding in Kraemer v. Zoning Board of Review, R.I. 210 A.2d 650. There is no validity in the petitioner's position in this regard.
The petition for certiorari is denied and dismissed, the action of the respondent board is affirmed, and the writ issued is quashed. The records certified to this court are returned to the board with our decision endorsed thereon.