DECISION
Before this Court is an appeal by petitioners Bess Eaton Donut Flour Co. ("Bess Eaton") and United Builders Supply Co., Inc. ("United Builders Supply") from the decision of the Zoning Board of Review for the Town of Richmond (the Board) which denied Bess Eaton a special exception to erect an off-premises sign on property owned by United Builders Supply. Petitioners seek a reversal of the Board's April 25, 1995 decision denying petitioners' request for the issuance of a special use permit. Jurisdiction lies pursuant to R.I. Gen. Laws § 45-24-69.
Factual Background and Procedural History
United Builders Supply is the record owner of lot 59 on Richmond Assessors plat 5B. As the owner of lot 59, United Builders Supply gave Bess Eaton written permission to place a four foot by three foot Bess Eaton sign on Lot 59. The petitioners then applied to the Town of Richmond Zoning Board of Review for a special use permit to construct the sign pursuant to Richmond Ordinance § 18.24.090. After holding a hearing on February 27, 1995, and conducting a workshop on April 19, 1995, the Board denied petitioners' request.
Standard of Review
This Court's standard of review of a zoning board decision has been codified as follows:
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board or review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
R.I. Gen. Laws § 45-24-69 (D). In addition, the zoning board of review "shall include in its decision all findings of fact and conditions." Id. § 45-24-61 (a).
When reviewing a decision of a zoning board, the Superior Court may not substitute its judgment for that of the zoning board if it can conscientiously find that the board's decision was supported by substantial evidence. Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a mere scintilla but less than a preponderance." Caswell v. George Sherman Sand andGravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-825). The reviewing court simply "examines the record below to determine whether competent evidence exists to support the tribunal's findings."New England Naturist Ass'n, Inc. v. George, 648 A.2d 370, 371 (R.I. 1994)(citing Town of Narragansett v. InternationalAssociation of Fire Fighters, AFL-CIO, Local 1589, 119 R.I. 506, 508, 380 A.2d 521, 522 (1977)). If the record is "completely bereft of competent evidentiary support" for a board's findings, then the decision must be reversed. Sartor v. Coastal ResourcesManagement Council, 542 A.2d 1077, 1083 (R.I. 1988). Similarly, it is not within the Court's authority to uphold a zoning board's decision if the decision was infected by legal error. HarmelCorp. v. Zoning Board of Review, 603 A.2d 303, 305 (R.I. 1992).
The Board's Decision
On appeal, petitioners seek a reversal of the Board's denial of the petitioners' application for a special use permit to erect an off-premises sign. Petitioners argue that the Board's decision is clearly erroneous and is not supported by the competent evidence of record.
The Richmond Zoning Ordinance allows for property such as lot 59 which is zoned for general business to contain off-premises signs (i.e., signs for businesses which are located on lots other than the business location). See Richmond Ordinance § 18.24.090 (stating "[i]n all business and industrial districts, one sign, not larger that twelve square feet in area, advertising or indicating any local business located on a lot or parcel of land other than the premises is permitted as a special use permit in accordance with . . . § 18.52.[0]10.") and Bamber v. ZoningBoard of Review, 591 A.2d 1220 (R.I. 1991)(stating that a special exception is a petition requesting relief expressly allowed by the applicable zoning ordinance). Pursuant to § 18.24.090 of the Richmond Zoning Ordinance, petitioners' special use application proposed the erection of a one-sided Bess Eaton sign on lot 59 which would measure four feet by three feet in size and rise approximately seventy-five feet from the ground. This sign was to be located seventy-five feet back from the edge of Route 138 on property owned by United Builders Supply. Tr. of March 27, 1995 hearing at 8-9. To obtain the requested special use permit, petitioners had to prove to the Board that their proposal would not have a detrimental impact upon the public's health, safety, welfare or morals. Bamber, 591 A.2d at 1223-1224 (citing Gara Realty Inc. v. Zoning Board of Review,523 A.2d 855 (R.I. 1987)). More specifically, petitioners had to satisfy the Board that the issuance of the permit would not result in "conditions inimical to the public health, safety, morals and welfare" in that the "use [would] be (1) compatible with the neighboring uses, (2) consistent with the comprehensive plan's purposes, (3) compatible with orderly development of the Town, and (4) compatible environmentally with neighboring properties, including consideration of possible effects on surrounding property values. Richmond Zoning Ordinance § 18.52.010 (c).
At the March 27, 1995 hearing, the Board heard from Bess Eaton representative Robert Gervasini. Mr. Gervasini testified about the dimensions and location of the proposed sign and that Bess Eaton was seeking permission to erect the sign so that it could compete with a Dunkin Donut's franchise that had opened between the Bess Eaton business location and the proposed location of the off-premises sign on Route 138. Upon inquiry by the Board, Mr. Gervasini also stated that United Builders Supply had agreed that no other off-premises signs would be placed on Lot 59.
The Board also heard the testimony of Mr. David Thompson, accepted by the Board as an expert in real estate and real estate appraisal. Mr. Thompson testified that based on his view of the area, the fact that the property to the north of the sign is zoned commercial/general business and the fact that the land to the south of the sign is zoned industrial, the sign is compatible with neighboring uses. In addition, Mr. Thompson testified that the sign met all of the other three requirements found in § 18.52.010, of the Richmond Zoning Ordinance, in that the sign was consistent with the comprehensive plan's purposes, was compatible with orderly development of the Town, and was environmentally compatible with neighboring properties. Mr. Thompson specifically addressed certain concerns which were voiced by members of the local community regarding the proximity of the proposed sign to the location of the Planned District across Route 138 by stating that, in his expert opinion, the sign was compatible with the Planned District because the District allowed "for a mix of residential and commercial uses" and that the general trend within the District was away from residential and toward commercial development.
The Board also had before it the affidavit of Michael Lenihan, who the Board also accepted as an expert in the areas of real estate and real estate appraisal. The Lenihan affidavit states that the granting of the special exception request is in conformance with Article 18-52-010. Tr. of March 27, 1995 hearing at 24. Lenihan also stated in his affidavit that, in his expert opinion, the sign would be compatible with neighboring uses. Tr. of March 27, 1995 hearing at 24, 26.
Lastly, the Board heard from neighbors with residences in the abutting "Planned District" who in unsworn statements voiced concerns over the appropriateness of such a sign so close to the Planned District. Tr. of March 27, 1995 hearing at 32 (statement of Ms. Mowchan asserting that the planned development zone was designed to maintain the rural character of the town, and that as a result, signage in the zone was restrictive and allowing additional signs so close to the District would "begin to detract from the rural atmosphere of the Town.") The primary concern of these remonstrants, however, appeared to be focused more on the perceived belief that the sign would serve no purpose. Tr. of March 27, 1995 hearing at 30 (statement of Mr. Seirra stating that "[i]t may be in conformity with the long-term plan, but it doesn't make sense to me at all to have a sign to accomplish something that's already being accomplished.") and Tr. of March 27, 1995 hearing at 35-36 (statement of Ms. Richard in which she opined that the sign was not going to make a difference, that because the sign would not be allowed in the Planned District zone, it is incompatible with it, and that because the sign is not necessary, allowing it would set a bad precedent).
The Board denied petitioners' application by a vote of three to two because the request allegedly did not meet the first requirement of the zoning ordinance that the proposed off-premises sign be "compatible with neighboring uses." Noticeof Decision dated April 25, 1995. Thus there is no dispute that petitioners satisfied the other three requirements for issuance of a special use permit (namely that the sign was consistent with the comprehensive plan's purposes, was compatible with orderly development of the Town, and was environmentally compatible with neighboring properties). Board member Fangiullo, who voted to reject the petition, did so because "[a]lthough it is in the general business district, . . . I don't feel it will be compatible because there's the Planned District located directly across the street from where the sign will be located." (Tr. of April 24, 1995 hearing at 13). Board member McDermott, who also voted to reject the petition, opined that, based on his visual view of the area, "all signs appear to be on the establishment property, [and] [f]or that reason, it does not meet the first requirement to be compatible with neighboring use." Id. at 14 
15. Lastly, Board member Prescott based his vote to deny the petition on the fact that he did not "feel that it will be compatible with neighboring land uses" in that he found that there were residential and agricultural properties adjacent to the proposed sign location.
Petitioners contend that the Board's denial of the special use permit was improper in that it was not based on legally legitimate reasons and was not supported by substantial and competent evidence of record. They argue that the Board disregarded the uncontradicted expert opinions of Mr. Thompson and Mr. Lenihan, as presented by petitioners, and failed to indicate that it was relying upon its own expertise or inspection of the premises. The Board responds that its determination that the proposed off-premises sign is not compatible with neighboring uses merely reflects the Board's decision to credit the testimony of the remonstrant neighbors Mowchan and Richard over the testimony of petitioners' expert Michael Lenihan. Defendant's Memorandum at 8. The Board indicates that it disregarded the expert testimony of Mr. Thompson because it lacked factual data.Id.
For a proposed use to be compatible with neighboring uses, it "must be congruous with, tolerant of, and have no adverse effects upon existing neighborhood uses." See Hein v. Zoning Board ofReview, 632 A.2d 643, 646 (R.I. 1993) and Richardson v.Zoning Board of Review, 221 A.2d 460, 101 R.I. 194 (1966)(bothquoting Handels Investors of Rhode Island v. Zoning Board ofReview, 214 A.2d 200, 100 R.I. 264 (1965)). Simply put, the use must be proper or reasonable in light of the surrounding neighborhood uses and must not adversely effect those uses. See
WEBSTER'S UNABRIDGED DICTIONARY 384 (2d ed. 1983)(defining congruous). In making a finding of incompatibility, "a Board of Review is presumed to have special knowledge of matters that are particularly related to the administration of a zoning ordinance and of local conditions as they are affected by the provisions of the zoning ordinance." Bonitati Bros. v. Zoning Board orReview, 99 R.I. 49, 55, 205 A.2d 363, 366 (1964) (citingKelly v. Zoning Board of Review, 94 R.I. 298, 180 A.2d 319, 322 (1962)). The Board also may act upon information gained by it through a site inspection. When, however, a board wishes to base a decision on such information or expertise, it must disclose for the record that it is doing so. Kelly, 94 R.I. at 303-304. The Board also must state for the record the factual findings it has made upon completing the inspection Id.
While Board member McDermott made such a statement on the record indicating that he had made a visual inspection of the area, the basis for his decision was legally improper. As discussed above, Mr. McDermott voted to deny the application because, from his view of the area, "all signs appear to be on the establishment property [and] for that reason it [the proposed off-premises Bess Eaton sign] does not meet the first requirement to be compatible with the neighboring uses." Tr. of April 24, 1995 hearing at 14-15. The mere fact that Bess Eaton's proposed sign might be the first off-premises sign in the area, however, does not logically support a finding that such a sign is incompatible with the area. Indeed, the fact is that the Town Council of Richmond, unlike other town councils, has specifically permitted off-premises signs to be constructed on lots in business and industrial districts.
Rather, the finding of compatibility or incompatibility must be based upon the merits of the specific application before the Board and not upon whether prior applications have been granted or even filed. Remarkably, Mr. McDermott was advised of the inappropriateness of his reasoning by Attorney Michael Cozzolino who was acting for Solicitor Michael Sweet at the April 19, 1995 discussion/workshop, yet he nonetheless cast his vote based upon this improper reasoning. Workshop Minutes dated April 19, 1995 at 411. Board member Graham reiterated Mr. Cozzolino's advice later during the meeting, and cast his vote to permit the sign pursuant to this advice by stating that "basically it is allowed in the law; and if you look at the property, and if we are going to allow any signs at all, this would be the place to do it . . . I personally am basically against signs, and I personally don't like it; but I feel it meets the intent of the law; and the fact that signs are allowed, I can't really come up with any objection to it in this particular locale." Tr. of April 24, 1995 at 7-8.
Neither of the other two Board members who voted to deny the application indicated that they had viewed the premises or that they were basing their decision upon their own expertise. These Board members simply disregarded the expert testimony before them which supported a finding that the proposed sign was compatible with neighboring uses and based their opinions on the unsworn lay opinions of Ms. Mowchan and Ms. Richard and a zoning map of the area. Again, as with the advice given Board Member McDermott, Attorney Cozzolino advised the Board that "[y]ou have to vary between the expert's weight and personal opinions. Expert testimony has to be given greater weight than a personal opinion . . . you can't substitute your opinion for an expert's opinion's [sic]. You are not bound by anyone's opinion but you should give greater weight to the expert's opinions in their areas." Workshop Minutes dated April 19, 1995 at 409, 411.
Our case law supports this viewpoint. The reliance of Board Members Fangiullo and Prescott on the non-expert testimony of Ms. Richard and Ms. Mowchan is legally insufficient in light of the fact that petitioners had produced expert testimony that the sign was compatible. Compare Roger Williams College v. Gallison,572 A.2d 61, 62 (R.I. 1990)(noting that a zoning board decision denying a special exception based on a non-expert's memorandum submitted by neighborhood remonstrants was improper in light of the petitioners' production of expert testimony contradicting the objector's assertions); and Burke v. Zoning Board of Review,238 A.2d 50, 51-52, 103 R.I. 404, 406-407 (1968) (reversing a zoning board decision denying a special use permit because the board's finding that the proposed construction would cause a traffic hazard was based on insufficient evidence where petitioner presented expert testimony that no traffic hazard would be created and the only contradictory evidence was the non-expert testimony of neighborhood remonstrants) withMendonsa v. Carey, 495 A.2d 257, 263 (R.I. 1985) (upholding a Zoning Board of Review's decision denying a special exception based on a finding that the proposed use was incompatible with neighboring uses where there was contradictory expert testimony as to the compatibility of the proposed use). This conclusion holds even if Mr. Thompson's testimony is totally disregarded for lack of a factual basis, because the Board acknowledges in its memorandum that it still had before it the expert testimony of Michael Lenihan that the sign was compatible. Defendants' Memorandum at 6, 8.
The Board found that the proposed Bess Eaton sign was incompatible with the area notwithstanding the uncontradicted expert testimony of record. The experts' finding of compatibility was premised on the fact that 1) there were other commercial signs in the area, 2)the area was zoned for commercial/general business uses, 3) the commercial and business nature of the area was expanding, and 4) the value of existing surrounding sites' would not be impacted by the sign. Tr. of March 27, 1995 at 19-21, 24, 25, 27, 33-34. The Board based its finding of incompatibility on the non-expert, conclusory testimony of Mr. Richard and Ms. Mowchan that the proximity of the Planned District to the sign made it incompatible. Defendants' Memorandum at 7. Such evidence of record is legally insufficient to support the Board's decision, for it does not establish that the proposed sign was improper, unreasonable, incongruous with, intolerant of, or detrimental to existing neighborhood uses. See Hein v.Zoning Board of Review, 632 A.2d 643, 646 (R.I. 1993) andRichardson v. Zoning Board of Review, 221 A.2d 460,101 R.I. 194 (1966) (both citing Handels Investors of Rhode Island v.Zoning Board of Review, 214 A.2d 200, 100 R.I. 264 (1965)).See also WEBSTER'S UNABRIDGED DICTIONARY 384 (2d ed. 1983)(defining congruous).
Conclusion
Accordingly, petitioners' appeal is sustained, and the Board's decision to deny the petitioners a special use permit to erect an off-premises is reversed, as it is not supported by substantial evidence of record. This matter is hereby remanded to the Richmond Zoning Board of Review for issuance of the requested special use permit.
Counsel shall confer and agree upon an appropriate form of order and judgment, reflective of this Court's decision, and submit it to the Court forthwith for entry.