DECISION
Before this Court is an appeal by a neighboring business owner from a decision of the Cranston Zoning Board of Review that granted the petition of Ernest and Carol Cormier, as trustees for Painted Warriors, Inc., for variances pursuant to the Zoning
Ordinances of the City of Cranston (the "Zoning Ordinances") to allow for a change in use of the property from an industrial printing business to a location for laser tag[1] and game room entertainment. For the reasons set forth herein, this Court reverses the Board's decision.
 FACTS/TRAVEL
Ernest and Carol Cormier (the "Cormiers"), as trustees of Painted Warriors, Inc. ("Painted Warriors"),[2] own a legal nonconforming building located at 51 Worthington
Road in the City of Cranston, designated as Lot No. 758 on Assessors Plat 10/4 in the Land Evidence Records of the City of Cranston (the "Property"). The Property is situated presently in an M-2 industrial zone and accommodates an industrial printing business which the Cormiers seek to change to a nonconforming laser tag and game room entertainment use. Accordingly, the Cormiers petitioned the Cranston Zoning Board of Review (the "Board") for relief from several provisions of the Zoning Ordinances of the City of Cranston: § 30-28 — Variance; § 30-8 — Schedule of Uses; § 30-17 — Schedule of Intensity; § 30-18(p) — Off Street Parking; § 30-18(r) — Signs; and § 30-22 — Change of Use (the "Zoning Ordinances").
On April 23, 2002, the Board held a public hearing on the Cormiers' petition for relief. At the hearing, the Board read into the record findings of fact made by the Cranston Site Plan Review Committee (the "SPRC") that were included in a letter of April 23, 2003 addressed to the Board. The Board thus took notice of the SPRC's unanimous vote to approve the Cormiers' preliminary site plan subject to a proposed billboard sign being no larger than one-hundred-fifty square feet and approval of the parking lot layout by the City traffic engineer. Tr. at 3-4.
The Board also heard testimony from Mr. Gary Noel ("Mr. Noel"), President of Painted Warriors, who testified that the Cormiers, as trustees of Painted Warriors, sought the variances to entertain customers with laser tag hunts and video games. Mr. Noel further indicated that the Cormiers intended to serve catered food to clients and that the intended hours of operation were to be from 3:00 p.m. to 10:00 p.m., Monday through
Friday, and 10:00 a.m. to 11:00 p.m. on Saturday and Sunday. Tr. at 14.
Mr. Philip Place, a co-owner of O.E. Place Tool Company ("Place Tool") with Helen Place (the "appellant"), opposed the petition. Place Tool is located in the same industrial park as the Property. At the hearing, Mr. Philip Place testified that it was his belief that the proposed change in use would affect adversely the industries located in the industrial park. He opined that the proposed use would attract an unsupervised teenage clientele that might threaten the security of the neighboring businesses, most of which would not be in operation during the Property's proposed hours of operation. Finally, Mr. Ketin Shah ("Mr. Shah"), a neighboring business owner, and Mr. Alan Place voiced similar concerns to the Board.
On the same date, the Board, by a four-to-one (4-1) majority, voted to approve the Cormiers' petition for relief with the condition that the "maximum signage [shall not exceed] 300 square feet total and signage height shall be no more than 40 feet maximum." On May 15, 2002, the Board posted its decision in the Cranston Office of the City Clerk. On May 31, 2002, the appellant timely filed her appeal from the Board's decision with this Court. This Court has jurisdiction of this appeal pursuant to R.I. Gen. Laws § 45-24-69.
 STANDARD OF REVIEW
Aggrieved parties may appeal a decision of the Board to this Court pursuant to R.I. Gen. Laws § 45-24-69. This statutory provision dictates that the Court's review of the decision:
 (c) shall be conducted . . . without a jury. The court shall consider the record of the hearing before the zoning board of review. . . . (d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are: (1) In violation of constitutional, statutory, or ordinance provisions; (2) In excess of the authority granted to the zoning board of review by statute or ordinance; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id.
The reviewing court gives deference to the decision of the zoning board, the members of which are presumed to have special knowledge of the rules related to the administration of zoning ordinances and the decision of which must be supported by legally competent evidence. Monforte v.Zoning Bd. of Review of East Providence, 93 R.I. 447, 449, 176 A.2d 726, 728 (1962); see Braun v. Zoning Bd. of Review of South Kingstown,99 R.I. 105, 206 A.2d 96 (1965) (defining competent evidence as "any evidence that is not incompetent by reason of being devoid of probative force as to the pertinent issues" including "knowledge acquired by inspections as well as that presumed to be possessed by members of such boards"). This deference, however, must not rise to the level of "blind allegiance." Citizens Savings Bank v. Bell, 605 F. Supp. 1033, 1042 (D.R.I. 1985). The court conducts a de novo review of questions of law; thus, the court may remand the case for further proceedings or vacate the decision of the zoning board if it is "clearly erroneous in view of the reliable, probative and substantial evidence of the whole record" or otherwise affected by legal error. von Bernuth v. Zoning Bd. of Review,770 A.2d 396, 399 (R.I. 2001); R.I. Gen. Laws § 45-24-69(d)(5).
 ANALYSIS
A use variance is defined by Rhode Island law as the "[p]ermission to depart from the use requirements of a zoning ordinance where the applicant for the requested variance has shown by evidence upon the record that the subject land or structure cannot yield any beneficial use if it is to conform to the provisions of the zoning ordinance." R.I. Gen. Laws § 45-24-31(61)(i). Thus, "a landowner must prove that `rigid insistence upon the property being devoted to a use permitted by the zoning regulations will deprive him of all beneficial use of his property and will therefore be confiscatory.'" Gaglione v. DiMuro, 478 A.2d 573, 576 (R.I. 1984) (quoting Goodman v. Zoning Bd. of Review, 105 R.I. 680, 683, 254 A.2d 743, 745 (1969)).
As to applications for use variances, R.I. Gen. Laws § 45-24-41
provides, in pertinent part, that a successful petitioner must demonstrate:
 (c)(1) [t]hat the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant . . .;
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
In addition, "the petitioner must show that the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of the zoning ordinance. . . ." R.I. Gen. Laws §45-24-41(d)(1). These statutory prerequisites to the granting of a use variance codified in R.I. Gen. Laws § 45-24-41 are repeated virtually verbatim in § 30-28 of the Zoning Ordinances.
Furthermore, with respect to a zoning board's decision to grant a variance, the Zoning Ordinances require that "[a]ll decisions and records of the zoning board of review respecting appeals shall conform to the provisions of R.I.G.L. Section 45-24-61." Zoning Ordinances of the City ofCranston § 30-42(M). Specifically, R.I. Gen. Laws § 45-24-61
provides, in pertinent part, that "[t]he zoning board of review shall include in its decision all findings of fact and conditions, showing the vote of each participating member. . . ." R.I. Gen Laws § 45-24-61(a). The Rhode Island Supreme Court has reaffirmed the requirements of this statute, noting that "`a municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of fact and reasons for the action taken.'" Sciacca v. Caruso, 769 A.2d 578, 585 (R.I. 2001) (quoting Irish Partnership v. Rommel, 518 A.2d 356, 358 (R.I. 1986)). Such findings "must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany." Id; see also von Bernuth, 770 A.2d at 401. Faced with the all too frequent occurrence of cursory zoning board decisions on variance applications, the Rhode Island Supreme Court recently cautioned zoning boards and their attorneys — prior to the Board's decision in this case — "to make certain that zoning-board decisions on variance applications (whether use or dimensional) address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45-24-41(c) and (d)." Id.
In the case at bar, the Board utterly failed in its decision to follow these explicit dictates of the Rhode Island Supreme Court. In conclusory fashion, the Board stated only that "the granting of this application will not prove detrimental to the neighborhood. The applicant met the requirements of the Zoning Code Section 30-28." Decision at 1. The Board failed to make any independent findings of fact with respect to the Cormiers' application for relief and simply restated the findings of fact made by the SPRC. While the Board makes a passing reference to the applicable law in its decision by citing § 30-28 of the Zoning Ordinances, it does not apply that law to the facts as found by the SPRC or to the evidence adduced at the hearing to justify its legal conclusions. There simply is no way to tell from the Board's decision why it granted the requested zoning relief. By failing to make these mandated findings of fact and conclusions of law, the Board ignores the provisions of the Zoning Ordinances that it is duty bound to follow, undermines its credibility as an administrative tribunal, fails to serve the litigants who appear before it and deprives this Court of the opportunity for meaningful appellate review.
Under such circumstances, our Supreme Court has instructed that this Court should not "search the record for supporting evidence or decide for itself what is proper." von Bernuth, 770 A.2d at 401 (quoting IrishPartnership, 518 A.2d at 359). Rather, the reviewing court may "remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced. . . ." R.I. Gen. Laws § 45-24-69. It is well-accepted, however, that a remand for further proceedings "should not be exercised in such circumstances as to allow [parties] another opportunity to present a case when the evidence presented initially is inadequate." Roger Williams College v. Gallison,572 A.2d 61, 62 (R.I. 1990). Rather, the remand "should be based upon a genuine defect in the proceedings in the first instance, which defect was not the fault of the parties seeking remand. . . ." Id.
Consonant with these legal precepts, it is not the prerogative of this Court to search the record for evidence supportive of each of the legal requirements for obtaining a use variance as set forth in R.I. Gen. Laws § 45-24-41 and § 30-28 of the Zoning Ordinances. It is not the role of this Court to decide independently what zoning relief is proper based on the record. Instead, this Court's review function is limited to ensuring that the Board's factual findings are supported by the record and that its conclusions of law are correct based on its findings. Yet, here the Board deprived this Court of any opportunity to review its decision by its failure to make the required findings of fact and conclusions of law. As such, this Court must determine whether to reverse the decision or remand it to the Board for further proceedings.
In determining whether a remand is appropriate, this Court must decide whether the Cormiers presented adequate evidence to the Board in the first instance to support their request for zoning relief and, if not, whether any defects in that proceeding precluded the Cormiers from presenting such a case. The record reflects that the Cormiers petitioned the Board for a use variance so as to change the present permitted use — namely, a printing business — to a nonconforming use — specifically, a laser tag and game room entertainment facility. At the hearing, the Board read into the record the SPRC's findings of fact with respect to the Property. Specifically, the SPRC found that:
 Forty four parking spaces are provided. Using the retail/services parking standard, 98 spaces are required for both proposed uses, 71 for laser tag and 27 for office use. The proposed billboard style sign is 480 square feet, 30 feet by 80 [sic] feet times two sided with a height of 48 feet. Maximum allowed free-standing sign is 50 square feet with 15 foot height. The total amount of allowed signage for the entire parcel would be 300 square feet. Additional signage requested is 147 square feet as follows: Awning signs, one at 90 square feet, which would be 18 feet by 5 feet, and one at 25 square feet, which would be 5 feet by 5 feet. Free standing signage requested is 32 square feet, which would be 4 feet by 8 feet. The zoning ordinance allows a maximum of 10 video games per location, and requires 1 parking space per three machines. The handicapped parking space required 8 feet of unloading space. . . . [T]he commission unanimously voted to recommend approval of this application subject to the following: The two sided billboard style signs to be no larger than 150 square feet, which would be 15 feet by 5 feet. This reduction will bring the total signage proposed to 297 square feet, which is less than the 300 square feet allowed. Number two, approval of the parking lot layout by the city traffic engineer. Tr. at 3-4.
Next, the Board heard from Mr. Noel who testified that the Cormiers were seeking the requested relief to establish a laser tag facility wherein "the attendants would wear a vest equipped with sensors that would pick up a laser tag signal. . . . This would be in an arena with several partitions in the room. They would basically play within this room." Tr. at 9-10. Mr. Noel further testified that the proposed use would be targeted toward attracting people "basically 5 through 29" as potential clients and that the ultimate goal of the business would be "to get more advertising out there for our [paintball] games. It's one of the best ways to advertise." Tr. at 11, 13. Mr. Noel also opined that the proposed use would not negatively impact the surrounding businesses, and the Cormiers' counsel posited that some of the surrounding businesses may have been changed to commercial uses.
The Board also heard testimony from Mr. Philip Place, Mr. Shah and Mr. Alan Place, all of whom voiced opposition to the granting of the proposed relief. Specifically, Mr. Philip Place posited that if the Board granted the Cormiers' requested relief, the consequent commercial activity would cause "trash and litter problems. . . ." Tr. at 26. Similarly, Mr. Shah expressed concern, later echoed by Mr. Alan Place, that because "this business attracts . . . a lot of kids . . . it's an area where we're very concerned about what happens with these kids . . . they'll get into trouble, and possibly have a big impact on the nice industrial park. . . ." Tr. at 34-35.
The record indicates, therefore, that the applicant presented evidence as to the nature of its proposed use as well as the parking and signage that would accompany that use. This evidence arguably addresses the concerns raised by the SPRC and the applicant's burden under R.I. Gen. Laws § 45-24-41(c)(3) to establish that the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan.
Yet, the applicant presented no expert testimony to satisfy its burden of proof in this regard and the lay opinion testimony it presented through Mr. Noel and the Cormiers' counsel cannot be deemed probative on the issue of impact of the proposed use as it was unsupported by any factual data. See generally, Tr; see Richardson v. Zoning Bd. Of Review,101 R.I. 194, 221 A.2d 460 (1966) (abutting property owner's bare assertion that proposed use would depreciate her property was lay judgment unsupported by any factual data and was not competent evidence that would warrant denial of special exception). While the Board may "take into consideration probative factors within [its] knowledge" regarding such issues and "if possessing no such knowledge, the board may subsequently acquire it by taking a view and relating their resulting observations to the evidence adduced by the applicant in the reasons for their decision," the Board here neither professed to possess nor obtained any such special knowledge regarding impact of the proposed use and its conformance with the Zoning Ordinances and the Comprehensive Plan. Smithv. Zoning Bd. of Review, 103 R.I. 328, 335, 237 A.2d 551, 555 (1968).
Moreover, the record is devoid of any evidence that the applicant satisfied any of the other proof requirements of R.I. Gen. Laws §45-24-41 that are necessary prerequisites to its obtaining a use variance. In particular, the applicant failed to present evidence to the Board to establish: (1) that the hardship from which it sought relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area or to a particular economic disability of the applicant (R.I. Gen. Laws §45-24-41(c)(1)); (2) that the hardship is not the result of prior action of the applicant and does not result from the desire of the applicant to realize grater financial gain (R.I. Gen. Laws § 45-24-41(c)(2)); (3) that the relief requested is the least relief necessary (R.I. Gen. Laws § 45-24-41(c)(4)); and (4) that the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of the zoning ordinance (R.I. Gen. Laws § 45-24-41(d)(1)). In addition, the Board did not profess to possess or procure any special knowledge as to whether a total deprivation of all of the Property's legally beneficial use would result if the requested relief were not granted.
The record of this case proves, therefore, that the Cormiers had a full and fair opportunity to present evidence to the Board to support their request for zoning relief and failed to do so. The Board's failure to follow the dictates of the Rhode Island Supreme Court and to render a decision with the requisite findings of fact and conclusions of law (which admittedly is not the fault of the applicant) should not provide the applicant with a second bite at the apple to present the evidence required to prove entitlement to a use variance that it should have presented in the first instance. Thus, this Court finds that a remand for the purpose of allowing the Board to make findings of fact and conclusions of law would be futile on the state of the record and that a remand for the taking of more evidence would be here "inappropriate."Roger Williams College, 572 A.2d at 62.
After review of the entire record, this Court finds that the decision of the Board is arbitrary and capricious, in violation of statutory and ordinance provisions, and affected by error of law. Accordingly, the decision of the Board is reversed. Counsel shall confer and submit to this Court forthwith for entry an agreed upon form of order and judgment consistent with this Decision.
[1] A laser tag game involves participants hunting each other in an arena armed with pistols capable of firing harmless laser beams. The object of the game is to tag others by shooting them with laser beams and to avoid being tagged by an opponent's laser beam. Tr.
[2] At various locations throughout the state, Painted Warriors operates paintball contests, wherein participants hunt each other with toy guns capable of discharging harmless paint pellets.