DECISION
In this administrative appeal, the Montessori Centre of Barrington, Inc. ("Montessori") challenges a decision of the Zoning Board of Review for the Town of Barrington, sitting in its capacity as the Planning Board of Appeals (the "Board of Appeals"), that denied its request for a special use permit that would have allowed Montessori to expand its existing day care center and school into the second floor of the building. For the reasons set forth in this Decision, this Court reverses the decision of the Board of Appeals.
 I FACTS AND TRAVEL
For the past several years, Montessori has operated a day care center and school on the first floor of a building located at 303 Sowams Road in Barrington, Rhode Island. The second floor was used most recently as a commercial dance studio. See Traffic Impact Analysis, dated September 21, 2005, at 1. The property, identified as Assessor's Plat 30, Lot 64, is located in a "Neighborhood Business Zone" ("NB Zone"). According to the Zoning Ordinance for the Town of Barrington (the "Zoning Ordinance"), Montessori is a "private school" that is permitted only *Page 2 
by a special use permit within the NB Zone.[1] See Ordinance, Art. IV, § 185-8(E). As such, the Zoning Ordinance prohibits any increase in that use absent a special use permit. See id.
On May 11, 2006, Montessori filed an application for a special use permit, proposing an expansion of its day care center and school to include the second floor of the building currently in use, prospectively doubling the number of students from 30 to a capacity of 60 at any one time. To obtain such a permit, § 185-151(c) of the Zoning Ordinance first required Montessori to obtain approval of its Development Plan from the Planning Board for the Town of Barrington, to be followed by approval of its application for a special use permit from the Board of Appeals. The Development Plan filed by Montessori with the Planning Board proposed modification of its current parking plan and the installation of a new drainage system. It proposed no structural changes to the existing building.
The Planning Board held duly noticed public hearings on June 6, 2006 and July 11, 2006 to consider the proposal. At the June 6, 2006 hearing, Anthony DeSisto, counsel for Montessori, presented Paul J. Bannon, Vice President of RAB Professional Engineers, Inc. ("RAB"), as an expert witness to explain a Traffic Analysis conducted by his firm at the site.[2] He also introduced the Traffic Analysis into evidence.
Attorney John J. Revens, Jr., represented a group of residents who live on nearby Oak Grove Avenue. The neighbors objected to the Development Plan on the grounds that it was incomplete, approval of it by the Building Official had not yet occurred, and there were no provisions in the Zoning Ordinance for stacked parking or for a drop off zone in a parking area. *Page 3 
Attorney Revens told the Planning Board that the drop off plan was "unrealistic." He specifically complained that the Development Plan failed to meet, inter alia, §§ 185-79D, and 185-79E[3] of the Zoning Ordinance. He also questioned whether the drive-through facility standards of § 185-80[4] of the Zoning Ordinance needed to be met. Barrington Town Solicitor Nancy E. Letendre (Attorney Letendre) said that she would look into the regulations and make a determination for the following meeting.
Also at the June 6, 2006 hearing, two of the Intervenors in this Superior Court appeal, Ramona and Kenneth Skelly, spoke in opposition to the Development Plan. In addition, three other individuals spoke in support of the Development Plan, but their connection to the proposal is not clear from the record. Project Engineer Skyler Mills testified that he was in contact with the Director of the Barrington Department of Public Works, Alan Corvi, who indicated that the Department was working on a plan for dry wells in the parking lot. *Page 4 
To address the legal concerns of the Planning Board regarding the Development Plan, and to provide Montessori with additional time to provide information in connection with its application, the Planning Board continued the hearing until July 11, 2006. The Planning Board specifically asked Montessori to provide the following information for that hearing: 1) a drainage plan; 2) the proposed number of students, teachers, staff, and volunteers that would be housed in the day care center and school; and 3) "[a] more concrete drop/off parking plan that clearly outlines drop off and pick up schedules based on the student figures." Minutes of the June 6, 2006 Meeting, at 2.
At the following Planning Board hearing on July 11, 2006, the Barrington Town Planner, Phillip Hervey, testified that a representative from the Barrington Department of Public Works, the Town Police Chief, the Town Fire Chief and the Town Building Official had been to the Montessori site to review the Development Plan and that none of them had any objection to it. The Planning Board also had before it for its consideration: (1) a letter from the Rhode Island Department of Education indicating approval of an increase in student capacity from 30 to 60 children (provided inspection certificates were received from the Town Fire Marshal, the Town Building Official, and the Rhode Island Department of Labor and Training) (item 28)); (2) a letter form Robert Speaker, Building Official, addressing the questions raised by the Town Planner at the June 6, 2006 meeting (Item 30); (3) a letter from Mr. Corvi, Director of the Barrington Department of Public Works, indicating that the drainage plan conforms to all of the requirements of his department (Item 34); (4) an e-mail from Barrington Police Chief John LaCross indicating approval of the "pick up and drop off" plan for Montessori, stating that the plan "[l]ooks ok here. If the neighbors complain we will just have to monitor it." (Item 36); (5) a letter from Barrington Town Fire Chief Gerald A. Bessette indicating that the Montessori fire *Page 5 
alarm system is in compliance with the Rhode Island Fire Safety Code (Item 31); (6) comments from the Technical Review Committee regarding the proposal, and Montessori's response to those comments (Item 22); and (7) a letter from Montessori asking that it be allowed to phase in the improvements (Item 35). In addition, Montessori provided to the Planning Board the information that it had requested of the applicant at the June 6, 2006 hearing.
Attorney DeSisto spoke once again on behalf of Montessori, noting that the Building Official had responded to the Planning Board's questions. Planning Board members expressed the view that although there may not be restrictions in the Zoning Ordinance prohibiting stacked parking or parking spaces within a drop off area, those ideas were "not necessarily sound planning concepts." Attorney DeSisto responded that the student drop off system had been in place for several months, was the most efficient way to transport the children to and from the Montessori school, and that there had been no conflict with people needing to park in the drop off area during the scheduled drop off times.
The Planning Board discussed safety issues connected with the proposed parking and traffic plan. The minutes of the hearing indicate that the Planning Board suggested that there were better options for parking and traffic flow which Montessori had yet to consider and that it would be difficult to monitor and ensure compliance with the proposed drop off schedule; however, it did not define what it would consider to be a better option.
Attorney Revens expressed his clients' concerns about the number of students on site and further contended that Montessori's proposal did not comply with the parking ordinance. The owner of Montessori, Rey Ann Garcia-Mills, and one Jennifer Brock spoke in support of the Development Plan, noting that they had engaged in a cooperative effort with Town officials to *Page 6 
create an effective parking and traffic plan and that the parking/drop off plan in place had been working well.
After deliberation, the Planning Board reached a consensus; namely, "that while they support the school and would like it to succeed, the plan as it has been presented is not acceptable." Minutes of the July 11, 2006 Meeting, at 2. It further stated that "there are numerous safety concerns, and they felt that there are other options that the client could consider that would be an improvement over the current plan." Id. The Barrington Town Planner and the Town Solicitor were instructed to draft a motion to deny the Development Plan and to recommend to the Zoning Board that it deny the special use permit application.
On September 6, 2006, the Planning Board unanimously voted to deny Montessori's Development Plan, without prejudice, and to recommend to the Zoning Board that it deny Montessori's application for a special use permit.[5] It filed a written decision denying the Development Plan the following day.
Montessori appealed the Decision of the Planning Board to the Barrington Zoning Board sitting as the Planning Board of Appeals. Montessori argued on appeal that the Planning Board had exceeded its authority in denying the Development Plan because: (1) the substantial evidence of record did not support the Planning Board's conclusions related to traffic; and (2) the Planning Board failed to apply the proper standard of review to its application.
The Board of Appeals conducted a hearing on November 16, 2006.[6] At that hearing, Montessori argued that, according to the minutes of the Planning Board hearing, the members of *Page 7 
the Planning Board had visited the site but that they had failed to make specific findings as to their personal observations, as required by Rhode Island law. It argued further that the testimony of Montessori's expert witness, Mr. Bannon, and the Traffic Analysis entered into the official record should have controlled, as there was no expert opinion evidence offered in rebuttal. Montessori also contended that the Planning Board erred in denying the Development Plan on the hypothetical grounds that it could have designed a better parking plan.
The Intervenors responded that the Planning Board's decision should be upheld as it reflects findings based upon the facts and evidence presented to the Planning Board. They argued that the Board of Appeals cannot substitute its judgment for the Planning Board and only can decide if the Planning Board made prejudicial error in its findings.
The Planning Board contended that, under Rhode Island law, the personal observations of its members constituted legally competent evidence upon which it could base its decision. It also contended that the Planning Board was well within its discretion to deny Montessori's Development Plan.
The Board of Appeals voted 5-0 to deny the appeal, and it issued a written decision on December 22, 2006. That Decision stated, in pertinent part, as follows:
 Mindful of the deference accorded the findings made by the Planning Board, and in applying the statutory standard of review, we find that the Planning Board of Review committed no prejudicial procedural error or clear error. We further find that its decision was amply supported by the weight of the evidence in the record. In particular, Findings of Fact number 1 through 3 specifically detail the factual reasons for denial of the application. Further, despite the belief that Appellant's expert attested that the `plan was adequate,' the Planning Board found, and this Board adopts, the requirement that the plan must `maximize' pedestrian and vehicular safety.
 This Board is also persuaded by the legal authorities cited in the Planning Board's brief for the proposition that evidence gleaned from personal observations of zoning (or planning) board *Page 8 
members constitutes legally competent evidence upon which a finding may rest. In terms of the unchallenged testimony of one party's expert, the Planning Board is free to accept or reject such testimony as it deems appropriate.
Decision of the Board of Appeals, at 3 (citation omitted).
The Board of Appeals noted that it was persuaded by the legal authorities cited in the Planning Board's memorandum in reaching a conclusion that evidence gleaned from Planning Board members' personal observations was legally competent evidence on which a finding may have rested. Id. at 3 (citing Restivo v. Lynch, 707 A.2d 663 (R.I. 1998)). It thus dismissed Montessori's appeal of the denial of its Development Plan.
In accordance with G.L. 1956 § 45-23-71, Montessori filed a timely appeal from the Decision of the Board of Appeals with this Court on January 5, 2007. This Court has jurisdiction of this Appeal under that statute. A hearing justice granted the Skellys' motion to intervene on May 30, 2007. In its appeal, Montessori, as appellant, again asserts that the affirmation of the Planning Board's decision to deny its application by the Board of Appeals was clearly erroneous because: (1) substantial evidence of record does not support the Planning Board's conclusions relating to traffic; and (2) the Planning Board improperly applied the appropriate standard of review, resulting in error by the Board of Appeals in failing to reverse the Planning Board's decision. It asks this Court to reverse the decision of the Board of Appeals. The Town of Barrington and Intervenors, Meredith A. Skelly, Christopher D. Pascale, Ramona M. Skelly, and Kenneth J. Skelly, have filed objections to the appeal.
 II STANDARD OF REVIEW
Under the Subdivision of Land Act, review of a planning board's decision is limited. A zoning board reviewing the decision of a planning board may reverse the lower body only if the zoning board finds that there was prejudicial procedural error, clear error, or a lack of support *Page 9 
by the weight of the evidence in the record. See § 45-23-70(a).[7]
Appeals to the Superior Court for review of a decision of a zoning board, sitting as a board of appeal, are brought under § 45-23-71. Subsection (c) of that statute states:
 The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Section 45-23-71(c).
Judicial review of planning board decisions under § 45-23-71(c) is notde novo. See Munroe v. Town of E. Greenwich, 733 A.2d 703, 705 (R.I. 1999). Accordingly, the Superior Court reviews such decisions under the "`traditional judicial review' standard that is applied in administrative-agency actions." Id. "A municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of facts and reasons for the action taken." *Page 10 Sciacca v. Caruso, 769 A.2d 578, 585 (R.I. 2001). Such findings must be "factual rather than conclusional, and the application of legal principles must be something more than the recital of a litany."von Bernuth v. Zoning Bd. of Review of the Town of New Shoreham,770 A.2d 396, 401 (R.I. 2001).
The Superior Court's review of a planning board's decision "does not consider the credibility of witnesses, weigh the evidence, or make its own findings of fact." Id. (citing Lett v. Caromile, 510 A.2d 958, 960
(R.I. 1986)). Instead, "its review is confined to a search of the record to ascertain whether the board's decision rests upon `competent evidence' or is affected by an error of law." Id. (quoting Kirby v.Planning Bd. of Appeal of the Town of Middletown, 634 A.2d 285, 290
(R.I. 1993)). Legally competent evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance."Arnold v. Dep't of Labor and Training Bd. of Review, 822 A.2d 164, 167
(R.I. 2003).
The Superior Court's appellate authority to review a decision of a board of appeal, pursuant to § 45-23-71(b), is limited to "the record of the hearing before the planning board. . . ."§ 45-23-71(b). Accordingly, "judicial scrutiny of an agency's factfinding . . . is limited . . . to determin[ing] if there is any competent evidence upon which the agency's decision rests." Restivo, 707 A.2d at 667 (citing Grossman Sons, Inc.v. Rocha, 118 R.I. 276, 285-86, 373 A.2d 496, 501 (1977)). Consequently, "the trial justice's review should [be] restricted to a search of the record . . . and the search should [be] limited to the discovery of the necessary competent evidence." Id. *Page 11 
 III ANALYSIS
Montessori first contends that the Planning Board erred in disregarding both the uncontested expert testimony and the expert Traffic Analysis that it submitted in support of its Development Plan. It next asserts that personal observations made by Planning Board members only may be considered as legally competent evidence when the record discloses the nature and character of their observations, and that in this case, no such disclosures were made. Montessori further asserts that the Planning Board applied an incorrect standard when it concluded that Montessori had not demonstrated that the proposed plan was the "best solution" for maximizing pedestrian and vehicular safety because, it maintains, this conclusion placed an impossible burden upon Montessori to prove its case.
The Town and the Intervenors contend that the Planning Board's decision was supported by the reliable and probative evidence in the record. They maintain that the Planning Board was free to reject the expert testimony because the Development Plan failed to meet the requirements of the Zoning Ordinance. They further maintain that the personal observations made by some of the Board members constituted legally competent evidence. The Town and the Intervenors also assert that the Planning Board applied the correct standard of review because the proposed plan was deficient and that the term "best solution" necessarily is part of the requirement to maximize pedestrian and vehicular safety. In addition, the Town avers that because the Planning Board denied approval of the proposal, without prejudice, Montessori failed to demonstrate that its substantial rights had been prejudiced.[8] *Page 12 
 A. Expert Testimony versus Planning Board Observations
The first issue to be addressed is whether the Planning Board, and later the Board of Appeals, properly could have disregarded the uncontested expert testimony and the expert Traffic Analysis submitted by Montessori in support of its Development Plan and, instead, relied upon observations made by Planning Board members in denying Montessori its requested relief. To resolve this issue, this Court must examine the record below in light of the law relative to expert and lay testimony at an administrative hearing.
It is axiomatic that a zoning board may reject the testimony of an expert if there exists substantial contrary evidence in the record.See Restivo, 707 A.2d at 671. According to our Supreme Court, "there is no talismanic significance to expert testimony. It may be accepted or rejected by the trier of fact." Id. (citing Kyle v. PawtucketRedevelopment Agency, 106 R.I. 670, 673, 262 A.2d 636, 638 (1970);Cianciarulo v. Tarro, 92 R.I. 352, 361, 168 A.2d 719, 724 (1961)). This observation is particularly apt where there is persuasive contrary expert testimony. Id. In situations where there is no contradictory expert testimony or expert evidence in the record, however, a board must accept that testimony as undisputed, unless it can demonstrate that it relied upon its own special knowledge. Id.
In Restivo, the city council denied an applicant permission to subdivide land in an area known for water drainage problems. The applicant appealed, asserting that the city council had rejected the only competent and uncontraverted expert evidence in the record on the issue of drainage; instead, it maintained that the city council members improperly relied upon their own *Page 13 
personal observations and the testimony of lay persons.Restivo, 707 A.2d at 670. The Superior Court rejected that argument and affirmed the city council's denial of the application.
On appeal, the Supreme Court affirmed, holding that "[t]he subject matter here was not so arcane that inferences from factual lay testimony could not be drawn by members of the council based, in part, on their own expertise." Id. at 671 (stating that the "lay testimony is competent in respect to the presence of water in one's basement and such lay testimony describing physical facts and conditions does constitute evidence from which the planning board could fairly draw inferences"). In so holding, the Supreme Court distinguished the case from that ofSalve Regina College v. Zoning Bd. of Review of Newport, 594 A.2d 878,881-82 (R.I. 1991).
In Salve Regina, the Supreme Court held that "lay testimony [given by a civil engineer] regarding traffic data was not competent and had no probative force." Restivo, 707 A.2d at 671 (citing Salve Regina,594 A.2d at 881-82). Once this testimony was disregarded, there existed no competent evidence in the record upon which the zoning board of review could have based its denial of an application for a special use permit.See Salve Regina, 594 A.2d at 882 ("If, in reaching conclusions adverse to Salve Regina, the board relied upon its own knowledge of the area in question, the record fails to reveal the particular evidence upon which the board relied"); see also Toohey v. Kilday, 415 A.2d 732, 737 (R.I. 1980) (reiterating that "the lay judgments of neighboring property owners on the issue of the effect of the proposed use on neighborhood property values and traffic conditions have no probative force in respect of an application to the zoning board of review for a special exception"). Accordingly, lay judgments "as to whether the requisite traffic congestion or hazard within zoning contemplations would follow a grant of *Page 14 
this application was a subject matter not within the testimonial competence of a witness lacking in expertise." Toohey, 415 A.2d at 737.
Also important to consider is the fact that even if there is an increase in traffic, it "does not necessarily adversely affect the public convenience and welfare." Id. That is because "[a] mere increase in traffic at the site of a proposed use is not a valid zoning criterion when neither a consequent intensification of traffic congestion nor hazard at the location accompanies it." Id.
In the instant matter, the record contains letters from the Barrington Department of Public Works (Item 33), the Town Police Chief (Item 36), the Town Fire Chief (Item 19 and 34), and the Town Building Official (Item 30) indicating that they have no objections to the Development Plan based upon their personal visits to the site (Item 2, p. 1). The record also contains a letter from the Rhode Island Department of Labor and Training's Division of Occupational Safety indicating 100% compliance with "all codes, rules, and regulations." (Item 15).[9] In addition, Mr. Bannon, Vice President of RAB, testified as a traffic expert at the Planning Board hearing of June 6, 2006. He explained a Traffic Analysis conducted by his firm at the Montessori site. The Traffic Analysis, commissioned by Montessori, became part of the official record at the Planning Board hearing. See Transcript of the Board of Appeals, at 8-9 (observing that the Traffic Analysis was part of the official record submitted by the Planning Board).
Richard A. Bernardo, a registered professional engineer and President of RAB conducted the Traffic Analysis. In that analysis, Mr. Bernardo reached the following conclusions: *Page 15 
 Based upon our analysis of the existing conditions of Sowams Road, Kent Street and Oak Grove Avenue, there appear to be no traffic safety or operational issues that require mitigation in the project area. While the addition of 30 more students will increase the volume of traffic on the servicing roadways during peak daily traffic periods, these new vehicles will not change or negatively affect the good operating conditions that presently exist in this area. . . . [B]ased upon the analysis conducted for this project, it can be concluded that the expansion of the Montessori Centre will not have a detrimental impact on traffic safety or operations on the servicing roadways in the project area. The facility presently, and in the future[,] has sufficient parking for daily operations and has secured off-site parking for special events that can also be managed by limiting attendance. On-street parking is also permitted and will not cause a safety hazard for residents living along Oak Grove Avenue as the roadway is of sufficient width to allow parked vehicles and a travel lane.
Traffic Analysis at 9 (emphasis added).
It is true that the Planning Board was not obligated to accept the expert testimony in support of the Montessori Development Plan as "talismanic" because, under Rhode Island law, it was free to accept or reject such testimony. See Restivo, 707 A.2d at 671. InRestivo, however, the issue was whether the finder of fact could accept or reject expert testimony, in the absence of contrary expert testimony, when there was competent lay testimony opposing the expert testimony.See id. Although the Planning Board is free to weigh expert testimony as it wishes against opposing evidence, it is not free to dismiss competent expert testimony when there is no competent evidence refuting it.See Salve Regina College, 594 A.2d at 882; see also 904 Boston NeckRoad, Inc. v. Pierhal, 2004 WL 2075236 C.A. No. WC 03-0077 at *5-6 (R.I.Super. Sept. 2, 2004) (holding that where a zoning board had no other expert testimony or evidence on the record adverse to appellants upon which it could base its findings and conclusions, except for the board members' unsubstantiated conclusions and generalizations about traffic which had no probative force, the zoning board decision must be reversed). *Page 16 
In this case, there is no legally competent evidence in the record supporting the Planning Board's denial of Montessori's Development Plan; conversely, all the competent evidence and testimony in the record supports it. Although this Court is not free to substitute its judgment for that of the Planning Board as to the weight of the evidence, it does have the power to reverse or modify the decision if the substantial rights of the appellant have been prejudiced by findings, inferences, conclusions, or decisions which are clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record.See § 45-23-71(c).
Against the abundance of evidence in favor of the Development Plan are the minutes from three Planning Board hearings conducted on June 6, 2006, July 11, 2006, and September 2, 2006, as well as the Planning Board's written decision. A close examination of these documents reveals no competent evidence which would support the Planning Board's decision to deny Montessori approval of its Development Plan.
The minutes of the July 11, 2006 hearing reveal that the Planning Board discussed safety issues and that Planning Board members believed that there were "better options for parking and traffic flow, which the applicant has yet to consider," and that they "had issue" with the staggered child drop off schedule; however, such safety concerns are not supported by any expert testimony or evidence in the record. There is no indication in the record of the basis upon which the Planning Board members rejected the unrefuted expert testimony and evidence proffered by Montessori, and there is no indication in the record that the board members formed their conclusions based upon their own personal observations. The July 11, 2006 minutes simply state that after deliberation with respect to the application, the Planning Board came to a consensus that the plan presented was not acceptable: "Board members stated that there are numerous *Page 17 
safety concerns, and they felt that there are other options that the client could consider that would be an improvement over the current plan."
Thereafter, the Planning Board issued its written decision of September 6, 2006 making the following findings of fact:
 1. The applicant has not demonstrated that the plans provide an adequate and safe drop-off zone and sufficient parking to handle the proposed doubling of the number of students and associated increase in staff.
 2. The applicant has not demonstrated that the proposed plan is the best solution in terms of maximizing pedestrian and vehicular safety on-site and along adjacent streets.
 3. The proposal would continue to utilize parking spaces that back onto Sowams Road and Oak Grove Drive, which creates conflicts with vehicles and pedestrian traffic on both streets. In addition, locating parking in these areas will make it difficult to extend sidewalks in front of the property on Sowams Road or Oak Grove Drive that do not conflict with on-site vehicular access.
 4. The site appears to have sufficient land area for an alternative design whereas a separate drop-off area and off-street parking area could be provided off of Oak Grove Drive, improving parking utilization, traffic flow and pedestrian safety and eliminating most of the traffic backing out into the roadways.
 5. Based on the above issues, the proposal is inconsistent with the Barrington Comprehensive Community Plan, including, but not limited to, the following:
 • Circulation Element-Goal 4. Provide a safe pedestrian environment wherever necessary, but particularly within commercial districts and in the vicinity of schools.
 • Circulation Element-Goal 5. Insure that traffic and circulation patterns are not adversely affected by commercial and residential development.
 • Circulation Element-Goal 6. Improve wherever possible, the traffic flow within existing commercial areas, and along major roadways serving Barrington.
 6. The proposal does not comply with the following site improvement requirements of the Zoning Ordinance with regard to off-street parking, in particular § 185-79D, § 185-79E, and § 185-80.
 7. For the record, the Board finds that:
 a. The use of stacked spaces north of the building for designated employee-only spaces would be appropriate.
 b. The proposal to use crushed stone in lieu of pavement for a portion of the parking area north of the building would also be *Page 18 
desirable, as this would help preserve a significant tree near Sowams Road and the northerly property line. This denial is without prejudice; the applicant may submit a revised application at any time for the Planning Board's consideration.
Planning Board Decision at 1-2.
The Planning Board then recommended denial of Montessori's application for a special use permit for the following reasons:
 1. The applicant has not demonstrated that the proposed parking lot modifications and drop-off plan would safely accommodate the proposed increase in enrollment at the school.
 2. The proposed staggered drop-off schedule would be difficult to monitor and enforce.
 3. The applicant's proposed parking and drop off plans fail to meet the criteria for granting a special use permit for relief from off-street parking requirements under § 185-75 of the Zoning Ordinance, as follows:
 A. The projected use and expansion will generate a much higher level of activity than currently exists and to ensure public safety a strict application of the parking and/or loading requirements would not be excessive.
 B. With the requested relief, the proposed parking plan will not enhance the visual appearance, does not provide essential amenities, such as landscaping, buffering, crosswalks and walkways and the proposed parking plan does not present some clear public or environmental benefit.
 C. The proposed site plan will not adequately accommodate traffic circulation and parking does not address the needs of parents, their children and the neighbors, thus compromising the safe and proper operation of the Montessori School.
Id. at 3.[10] *Page 19 
Assuming, arguendo, that the Planning Board members obtained information relative to traffic, parking, and safety as a result of their personal knowledge and inspection of the property or from evidence of the proposed plan for traffic and parking in the record, the decision of the Planning Board still is deficient. While such information arguably could constitute legally competent, reliable evidence upon which a finding may rest, it does so only if the record discloses the nature and character of the observations upon which the board acted.Toohey, 415 A.2d at 737-38; see also Perron v. Zoning Bd. of Review ofBurriville, 369 A.2d 638, 641 (R.I. 1977). Accordingly, a board must state for the record the factual findings it has made upon completing any personal inspection, and the record must contain some reasonable disclosure as to the knowledge the board has acquired and the extent of its reliance on that knowledge in making its decision. Kelly v. ZoningBoard of Review, 94 R.I. 298, 303, 180 A.2d 319, 322 (1962).
In Kelly, our Supreme Court succinctly stated:
 It is true that a board of review is presumed to have a special knowledge of matters that are peculiarly related to the administration of a zoning ordinance and of local conditions as they are affected by the provisions of a zoning ordinance. It is also true that a board of review may properly act on applications for an exception on the basis of knowledge that it has acquired through the making of an inspection of the property to which the application refers. However, while this court will presume the possession of such special knowledge by these boards of review, it will not presume that in making a challenged decision the board acted pursuant to such special knowledge in the absence of some disclosure to that effect in the record. Neither will this court presume that a board reached a decision pursuant to knowledge acquired by it through an inspection of the property under consideration. To sustain a decision on the basis of the board's acting on knowledge acquired by inspection, the record must contain some reasonable disclosure as to the knowledge so acquired and their action pursuant thereto.
Id. (internal citations omitted). Such required disclosure is still the law of this state. *Page 20 
In the instant matter, while Planning Board members may have conducted an inspection of the site or reviewed the proposed plan for traffic and parking in the record and based their decision to deny Montessori's Development Plan upon their observations and review, they made no such disclosure in the record. Indeed, rather than supporting the Planning Board's decision, the minutes of the June 6, 2006 Planning Board hearing, which indicate that some members were pleased with what they had observed in visiting the site, would support approval of the Development Plan. See Minutes, dated June 6, 2006, at 1 ("Several Board members stated they have observed the drop off plan first-hand and found it to be effective. . . .") As a result of the absence of probative evidentiary support for the Planning Board's findings in the record, this Court has no choice but to disregard the Planning Board's conclusory statements. See Toohey, 415 A.2d at 737-38.
Accordingly, this Court concludes that the Planning Board erred in discounting the uncontroverted expert testimony and Traffic Analysis proffered by Montessori. It also erred to the extent it made factual findings based upon its members' nondisclosed observations of the site or review of the plan for traffic and parking. As the Development Plan was supported by unrefuted competent evidence, the decision to deny the Development Plan was erroneous. Furthermore, because the uncontroverted evidence demonstrated that the Development Plan would not adversely affect traffic, parking, and pedestrian and vehicular safety, such issues should not be revisited by the Zoning Board during any subsequent consideration by it of Montessori's application for a special use permit. *Page 21 
 B. The "Best Solution"
The next issue that the Court must address is whether the Planning Board erroneously required Montessori to meet an impossible standard to win approval of its Development Plan. Montessori contends that the Planning Board erred in denying approval on the grounds that Montessori failed to achieve the "best solution" for maximizing pedestrian and vehicular safety.
"Although it is desirable that a board of review should, in stating its decision, adhere to the language employed by the statute, ordinance or opinions of this [C]ourt, failure to do so will not be fatal when it is clear that the decision, even though it states the applicable standard in loose rather than exact language, is supported by the evidence." Lincourt v. Zoning Bd. of Review of City of Warwick,98 R.I. 305, 311, 201 A.2d 482, 486 (1964); see also Richardson v. Zoning Bd. ofReview of the City of Warwick, 101 R.I. 194, 199, 221 A.2d 460, 464
(1966) (holding that the failure of a planning or zoning board to adhere to the language of statutes or ordinances will not be fatal when it is clear that the agency's decision, even though it states the applicable standards in less-than-exact language, is supported by the evidence).
In Richardson, the Rhode Island Supreme Court held that when a zoning board's decision is supported by the evidence, the board's deficiencies in draftsmanship and use of loose language, rather than words which mirror the applicable statute, are not fatal to a board's decision.Id. In that case, the petitioner sought review by the court of a zoning board decision of the city of Warwick which granted a neighbor a special exception allowing for the erection of a building intended to be used for the sale, servicing, and assembly of heavy-duty trucks.101 R.I. at 195, 221 A.2d at 462. The Court reasoned that although the board, in its decision, used the term "compatible" rather than the actual language of the statute which uses the word *Page 22 
"consistent," that language was not fatal to the board's decision because the terms are synonymous. Id. 101 R.I. at 199, 221 A.2d at 464.
Section 185-158 of the Barrington Zoning Ordinance outlines, in relevant part, the following standard of review of a development plan:
 A. In reviewing an application submitted under the provisions of this Article, the Technical Review Committee and/ or the Planning Board shall apply the following general standards for approval: . . . (5) Design which maximizes the safety and convenience of vehicular and pedestrian movement within the site and in relation to access streets and adjoining bicycle routes and walkways.
In an apparent effort to apply this standard, the Planning Board's second finding of fact reads:
"The applicant has not demonstrated that the proposed plan is thebest solution in terms of maximizing pedestrian and vehicular safety on-site and along adjacent streets." (Emphasis added).
Unlike in Richardson, even if this finding of fact is simply a "failure to adhere" to the precise regulatory language by the Planning Board, such a finding is unsupported by the evidence of record. Furthermore, it is not clear that the difference between the Planning Board's finding of fact and the Zoning Code is nothing more than "poor draftsmanship" or "loose language."[11] As a result, the Planning Board erred in this regard as well. *Page 23 
 IV CONCLUSION
After a review of the entire record, this Court finds that the Planning Board's decision to deny Montessori's Development Plan was unsupported by the reliable, probative, and competent evidence of record and was therefore arbitrary and capricious and in violation of Zoning Ordinance provisions. The Planning Board's decision also was affected by error of law and was characterized by an abuse of discretion. Therefore, Montessori's substantial rights have been prejudiced. Accordingly, this Court reverses the Planning Board's denial of the Development Plan. The matter is remanded to the Zoning Board to consider Montessori's application for a special use permit in accordance with this Decision.
Counsel shall confer and submit forthwith for entry an agreed upon form of order and judgment that is consistent with this Decision.
[1] A private school is defined as "[a]ny nonpublic nursery school, kindergarten, elementary (1-8), secondary school (9-12)." Zoning Ordinance, Art. II, § 185-5.
[2] Although the record does not identify Bannon as a professional engineer, he is Vice President of RAB. The Traffic Analysis is signed by Richard A. Bernardo, as President of RAB and a Registered Professional Engineer in Rhode Island, as well as Bannon, as Vice President of RAB.
[3] Sections 185-79 D and E of the Barrington Zoning Ordinance provide, as follows:
 Site improvement requirements. Off street parking areas for other than single-family residences shall conform to the following requirements:
 . . .
 D. Where the portion of the property used for such parking abuts a street, such portion, excepting approved curb cuts, shall be separated from the street line by a curb at least six inches high.
 E. Any such parking area established after the effective date of this chapter shall contain a planting strip between the parking area and the street approved by the Building Official, and such other landscaping treatment as hereinbefore required to be practicable and to make such parking area reasonably attractive.
[4] Section 185-80 of the Barrington Zoning Ordinance provides, as follows:
 Plans and specifications. Plans and specifications for any required parking facility and its access drives shall be submitted at the time of the application for the building permit for the principal use. In allocating land for such a facility, each car space shall have a minimum width of nine feet and a minimum depth of 18 feet and shall be served by adequate, suitable aisles to permit safe and easy access to all spaces. In no case shall the gross area of the required parking facility be less than 270 square feet per car space. In the case of single-family residences, the car space size requirements will be deemed satisfied by the provision of two such spaces end-to-end without the necessity of provision for access aisles.
[5] The Planning Board originally continued its vote on the application until August 1, 2006, but because of a failure to secure a quorum at that meeting, it continued the matter until September 6, 2006. Due to the procedural posture of this case, the Zoning Board has yet to consider the application for the special use permit.
[6] The Board of Appeals originally scheduled this hearing for October 19, 2006, but continued the hearing until November 16, 2006, after it failed to secure the requisite quorum at its earlier meeting.
[7] Section 45-23-70(a) provides:
 As established by this chapter, in instances of a board of appeal's review of a planning board or administrative officer's decision on matters subject to this chapter, the board of appeal shall not substitute its own judgment for that of the planning board or the administrative officer but must consider the issue upon the findings and record of the planning board or administrative officer. The board of appeal shall not reverse a decision of the planning board or administrative officer except on a finding of prejudicial procedural error, clear error, or lack of support by the weight of the evidence in the record.
[8] The latter argument has no merit because an improper denial itself would be the cause of substantial prejudice. Furthermore, under the doctrine of administrative finality, Montessori would have to demonstrate a substantial change in circumstances before it could successively reapply for development plan approval. SeeJohnston Ambulatory Surgical Associates, Ltd. v. Nolan,755 A.2d 799, 811 (R.I. 2000). Such a requirement also would substantially prejudice Montessori.
[9] The minutes further reflect lay testimony from Jennifer Black, Steve Gosner, and Sandy Winters at the June 6, 2006 hearing supporting the Development Plan and stating that they had not experienced traffic back up onto Oak Grove Avenue. (Item 1, p. 2.) As lay witnesses, however, their testimony is without any probative force. See SalveRegina, 594 A.2d at 881-82. Likewise, the testimony of Rey Ann Garcia-Mills, owner of Montessori, and Jennifer Brock, who spoke in support of the Montessori application at the July 11, 2006 hearing, and who stated that the parking drop-off plan has been in place and working well, also must be disregarded as non-probative lay testimony.See id.
[10] It should be noted that at two of the Planning Board hearings, the Skelly intervenors spoke in opposition to Montessori's application, stating that there were still traffic back ups and noting "numerous safety concerns" of residents on Oak Grove Avenue. This testimony is of no legal import, however, because the lay opinions of neighboring property owners on the issue of the effect of a proposed use on traffic conditions has no probative force in considerations by the Board.See Salve Regina, 594 A.2d at 882. Thus, the Board was not at liberty to consider the intervenors' testimony in denying Montessori's proposed Development Plan.
[11] The American Heritage Dictionary of the English Language defines "maximize" as "1. to increase or make as great as possible; 2. to assign the highest possible importance to." It defines the term "best" as "1. surpassing all others in excellence, achievement, or quality; most excellent; 2) most satisfactory, suitable, or useful; most desirable:the best solution. . . ." (Emphasis in original). As such, the term "best" requires a choice or judgment between multiple options. Here, Montessori's Development Plan was necessarily "the best solution" because it was the only solution presented. Moreover, the Development Plan does in fact "maximize" vehicular and pedestrian safety, as defined, because there is no competent evidence to refute Montessori's expert evidence that the plan is safe and nothing more than a conclusory statement by the Planning Board to indicate a contrary finding. *Page 1